No. 20-16294

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Lyudmyla Pyankovska,

Plaintiff-Appellant,

v.

Sean Abid, et al.,

Defendants-Appellees.

On Appeal from a Final Judgment of the
United States District Court for the District of Nevada
Case No. 2:16-cv-02942-JCM-PAL, Hon. James C. Mahan

## REPLACEMENT OPENING BRIEF FOR PLAINTIFF-APPELLANT
## LYUDMYLA PYANKOVSKA

Radiance Campbell
Alessandra Marie Lopez
Lois Zhang
 Student Counsel

Brian Wolfman
Madeline Meth
Hannah Mullen
GEORGETOWN LAW APPELLATE
 COURTS IMMERSION CLINIC
600 New Jersey Ave., NW,
Suite 312
Washington, D.C. 20001
(202) 661-6582

Pro bono counsel for Appellant Lyudmyla Pyankovska

April 22, 2022

# Table of Contents

Table of Authorities ............................................................................................. iii

Jurisdictional Statement ........................................................................................ 1

Issues Presented ..................................................................................................... 1

   I.  Issues as to appellee Jones ....................................................................... 1

   II.  Issues as to appellee Abid ....................................................................... 2

Statutory Addendum ............................................................................................. 3

Statement of the Case ........................................................................................... 3

   I.  Factual background ................................................................................... 4

     A. Secret recordings and selective editing ................................................ 4

     B. Use of recordings in state court and further custody proceedings ... 5

     C. Abid's postings on Facebook ................................................................ 8

   II.  District-court proceedings below ............................................................. 9

     A. Dismissal of Jones ................................................................................. 9

     B. Default judgment against Abid ............................................................ 10

     C. This appeal ............................................................................................ 16

Summary of the Argument ................................................................................... 17

Standards of Review ............................................................................................. 19

Argument ............................................................................................................... 20

   I.  The district court erred in dismissing Pyankovska's federal and state Wiretap Act claims against Jones. .......................................................... 20

     A. Jones is liable under the federal and Nevada Wiretap Acts for disclosing communications obtained in violation of the Acts. ........ 20

      1. Background law ................................................................................. 20

      2. Jones intentionally disclosed recordings he knew were illegally intercepted, violating the federal and state Acts. ........................... 23

        a) The recordings violated the Acts. .................................................. 23

        b) Jones's disclosure violated the Acts. ............................................. 26

B.  Neither *Noerr-Pennington* nor other First Amendment principles immunize Jones from Wiretap Act liability. .......................................29

C.  Jones's remaining arguments fail..........................................................34

II.  The district court failed to award legally appropriate damages on Pyankovska's default judgment against Abid under both the Wiretap Act and Nevada common law. ....................................................................36

A.  The district court erred in awarding Pyankovska only $10,000 under the Wiretap Act...........................................................................38

1.  Pyankovska is entitled to at least $70,700 in statutory damages under the Wiretap Act. .........................................................38

2.  Pyankovska is entitled to punitive damages under the Wiretap Act..................................................................................43

3.  Pyankovska is entitled to $1,413.25 in litigation costs under the Wiretap Act. ..........................................................................44

B.  Pyankovska is entitled to compensatory and punitive damages on her Nevada common-law claims...........................................................46

1.  Damages available on Pyankovska's common-law claims............47

2.  Pyankovska's proof of damages .......................................................48

Conclusion.........................................................................................................50

Certificate of Compliance ..............................................................................

Statutory Addendum.......................................................................................1a

# Table of Authorities

**Cases**                                                          **Page(s)**

*Abid v. Abid*,
    406 P.3d 476 (Nev. 2017) ...................................................................7

*Abrams v. Sanson*,
    458 P.3d 1062 (Nev. 2020) ..............................................................48

*Action S.A. v. Marc Rich & Co.*,
    951 F.2d 504 (2d Cir. 1991) ............................................................37

*Adriana Int'l Corp. v. Thoeren*,
    913 F.2d 1406 (9th Cir. 1990) .........................................................37

*Anonymous v. Anonymous*,
    558 F.2d 677 (2d Cir. 1977) ............................................................25

*Ass'n of Mex.-Am. Educators v. State of California*,
    231 F.3d 572 (9th Cir. 2000) .....................................................19, 44

*B&G Foods N. Am., Inc. v. Embry*,
    29 F.4th 527 (9th Cir. 2022) ...........................................................31

*Babb v. Eagleton*,
    616 F. Supp. 2d 1195 (N.D. Okla. 2007) ...................................10, 36

*Baird v. Hamilton Cnty. Dep't of Job & Fam. Servs.*,
    809 Fed. App'x 308 (6th Cir. 2020) ................................................33

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ...................................................................33, 34

*Berry v. Funk*,
    146 F.3d 1003 (D.C. Cir. 1998) ......................................................36

*Bess v. Bess*,
    929 F.2d 1332 (8th Cir. 1991) .........................................................40

*Blazy v. Tenet*,
    194 F.3d 90 (D.C. Cir. 1999)........................................................................45

*Bliss v. CoreCivic, Inc.*,
    978 F.3d 1144 (9th Cir. 2020) ............................................ 39, 41-42

*Butler v. Bd. of Cnty. Comm'rs for San Miguel Cnty.*,
    920 F.3d 651 (10th Cir. 2019)...................................................................33

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972)...................................................................................32

*Chandler v. U.S. Army*,
    125 F.3d 1296 (9th Cir. 1997)...................................................................36

*Curtis v. Irwin Indus., Inc.*,
    913 F.3d 1416 (9th Cir. 2019)...................................................................19

*Dillard Dep't Stores, Inc. v. Beckwith*,
    989 P.2d 882 (Nev. 1999) .........................................................................48

*DirecTv, Inc. v. Hoa Huynh*,
    503 F.3d 847 (9th Cir. 2007).....................................................................37

*DirecTv, Inc. v. Webb*,
    545 F.3d 837 (9th Cir. 2008).....................................................................42

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961)...............................................................................30, 31

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986)............................................................. 36-37

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008)...................................................................................44

*Fruit v. State*,
    238 P.3d 812, No. 48296 (Nev. Mar. 28, 2008) ......................................29

*Fultz v. Gilliam*,
  942 F.2d 396 (6th Cir. 1991)............................................................42

*Gelbard v. United States*,
  408 U.S. 41 (1972)..........................................................31, 35, 42

*Gorelangton v. City of Reno*,
  638 F. Supp. 1426 (D. Nev. 1986)................................................46

*Heggy v. Heggy*,
  944 F.2d 1537 (10th Cir. 1991).............................................36, 40

*Jacobson v. Rose*,
  592 F.2d 515 (9th Cir. 1978)........................................................43

*Key Bank Nat. Ass'n v. Van Noy*,
  598 F. Supp. 2d 1160 (D. Or. 2009)............................................46

*Koon v. United States*,
  518 U.S. 81 (1996).........................................................................19

*Kratz v. Kratz*,
  477 F. Supp. 463 (E.D. Pa. 1979) ...............................................36

*Kuzma v. IRS*,
  821 F.2d 930 (2d Cir. 1987) .........................................................45

*La Quinta Franchising, LLP v. Cordelia Hotel Venture Inc.*,
  2007 WL 9811148 (N.D. Cal. Nov. 16, 2007)..............................45

*Lalangan v. Pennington*,
  2022 WL 504477 (D. Ariz. Feb. 18, 2022).....................................37

*Marsh v. Curran*,
  362 F. Supp. 3d 320 (E.D. Va. 2019) ......................................27, 35

*Miniex v. Houston Hous. Auth.*,
  2019 WL 4920646 (S.D. Tex. Sept. 13, 2019)..............................45

*Nix v. O'Malley*,
   160 F.3d 343 (6th Cir. 1998) ....................................................27, 35

*Odima v. Westin Tucson Hotel*,
   53 F.3d 1484 (9th Cir. 1995) ...........................................................19

*Olivero v. Lowe*,
   995 P.2d 1023 (Nev. 2000) ...............................................................48

*People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*,
   859 P.2d 1269 (Nev. 1995), *overruled in part on other grounds by*
   *City of Las Vegas v. Hecht*, 940 P. 2d 134 (Nev. 1997) ...................47

*Pollock v. Pollock*,
   154 F.3d 601 (6th Cir. 1998) ..............................................6, 21, 26, 27

*Providence J. Co. v. FBI*,
   602 F.2d 1010 (1st Cir. 1979) ..........................................................42

*Quigley v. Rosenthal*,
   327 F.3d 1044 (10th Cir. 2003) .......................................................34

*Rodgers v. Wood*,
   910 F.2d 444 (7th Cir. 1990), *overruled in part on other grounds*
   *by DirecTv, Inc. v. Barczewski*, 604 F.3d 1004 (7th Cir. 2010) .......40

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ............................................................................32

*SEC v. Rajaratnam*,
   622 F.3d 159 (2d Cir. 2010) ........................................................ 27-28

*Smoot v. United Transp. Union*,
   246 F.3d 633 (6th Cir. 2001) .....................................................39, 43

*State v. Spencer*,
   737 N.W.2d 124 (Iowa 2007) ...........................................................25

*Strauss v. Comm'r of Soc. Sec. Admin.*,
   635 F.3d 1135 (9th Cir. 2011) ..........................................................19

*Theofel v. Farey-Jones*,
 359 F.3d 1066 (9th Cir. 2004)...........................................................32

*In re Toys R Us-Del., Inc.*,
 295 F.R.D. 438 (C.D. Cal. 2014).......................................................46

*Troxel v. Granville*,
 530 U.S. 57 (2000)...............................................................................25

*United Mine Workers v. Pennington*,
 381 U.S. 657 (1965)............................................................................30

*United States v. Crabtree*,
 565 F.3d 887 (4th Cir. 2009)......................................................35, 36

*United States v. Jones*,
 542 F.2d 661 (6th Cir. 1976)............................................................31

*United States v. Smith*,
 155 F.3d 1051 (9th Cir. 1998)..........................................................36

*United States v. Wuliger*,
 981 F.2d 1497 (6th Cir. 1992)..........................................................35

*Wagner v. Wagner*,
 64 F. Supp. 2d 895 (D. Minn. 1999)...............................................21

*Williams v. Williams*,
 581 N.W.2d 777 (Mich. Ct. App. 1998).........................................25

*Wright v. David L*,
 453 S.E.2d 646 (W. Va. 1994)....................................................24, 26

## Statutes and Rules

5 U.S.C. § 552a(g)(2)(B)...........................................................................45

5 U.S.C. § 552(a)(4)(E)..............................................................................45

18 U.S.C. § 2510 et seq. ........................................................................9, 20

18 U.S.C. § 2510(4) .................................................................20, 23, 39

18 U.S.C. § 2510(5) ...............................................................................39

18 U.S.C. § 2510(8) ...............................................................................22

18 U.S.C. § 2511(1) ............................................................................6, 35

18 U.S.C. § 2511(1)(a) .....................................................................20, 23, 39

18 U.S.C. § 2511(1)(c) ..................................... 17, 21, 28, 31, 36, 39, 40

18 U.S.C. § 2511(1)(d)..................................... 17, 21, 28, 31, 36, 39, 40

18 U.S.C. § 2511(2)(c) ................................................................... 6, 20-21

18 U.S.C. § 2511(2)(d)........................................................................ 20-21

18 U.S.C. § 2511(2)(e) ...........................................................................20

18 U.S.C. § 2511(4)(a) ...........................................................................22

18 U.S.C. § 2515................................................................6, 17, 22, 31, 35

18 U.S.C. § 2516 .....................................................................................20

18 U.S.C. § 2517 .....................................................................................20

18 U.S.C. § 2517(3) ...........................................................................6, 35

18 U.S.C. § 2518....................................................................................20

18 U.S.C. § 2520 .....................................................................................10

18 U.S.C. § 2520(a) ....................................................................22, 27, 39

18 U.S.C. § 2520(b).............................................................................2, 22

18 U.S.C. § 2520(b)(2) ..................................... 2, 3, 15, 43, 44-45

18 U.S.C. § 2520(b)(3) ..................................... 2, 3, 15, 44-45, 45

18 U.S.C. § 2520(c)(2) ...........................................................................22, 38

18 U.S.C. § 2520(c)(2)(B) ...............................................2, 15, 38, 40, 42

18 U.S.C. § 2520(d) ............................................................28

28 U.S.C. § 1291 ..................................................................1

28 U.S.C. § 1331 ..................................................................1

28 U.S.C. § 1367(a) ..............................................................1

28 U.S.C. § 1920 .............................................................45, 46

31 U.S.C. § 3730(h)(2) ..........................................................45

NRS 42.005(1) .....................................................................48

NRS 125.110(2) ....................................................................34

NRS 179.430 ........................................................................23

NRS 179.460 ........................................................................20

NRS 179.500 .............................................................6, 17, 22, 31

NRS 200.610 et seq. ...........................................................9, 20

NRS 200.620 ....................................................................20, 23

NRS 200.650.............................................. 6, 7, 17, 20, 21, 23, 31

NRS 200.690 ........................................................................22

NRS 200.690(1)(b) .........................................................22, 27, 28

Fed. R. Civ. P. 23(h)............................................................46

Fed. R. Civ. P. 37(b)(2)(A)(vi) ................................................36

Fed. R. Civ. P. 54(d)............................................................45

Fed. R. Civ. P. 55(b)(2) ........................................................36

**Legislative Materials**

S. Rep. No. 90-1097 (1968) ...................................................................31

**Miscellaneous**

Black's Law Dictionary (11th ed. 2019) ..............................................40

Facebook, *What's the difference between a public and private Facebook group and how do I change the privacy setting?*, www.facebook.com/help/286027304749263/?helpref=uf_share ..................................................................................................41

Pride, Elisabeth, *Down the Rabbit's Hole: Baby Monitors, Family Movies and Wiretap Law*, 23 J. Am. Acad. Matrim. L. 131 (2010) ...................................................................................25

Restatement (Second) of Torts (Am. L. Inst. 1977) ..........................47

Sullivan, Kathleen M., *The Intersection of Free Speech and the Legal Profession: Constraints on Lawyers' First Amendment Rights*, 67 Fordham L. Rev. 569 (1998) ..........................................33

Turkington, Richard C., *Protection for Invasions of Conversational and Communication Privacy*, 82 Neb. L. Rev. 693 (2004) ..............................26

Wright & Miller, *Federal Practice and Procedure* (4th ed. 2021) ........................37

## Jurisdictional Statement

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). ER-061; SER-247. The district court dismissed plaintiff-appellant Lyudmyla Pyankovska's claims against defendant-appellee John Jones on November 16, 2017. ER-080-88. On February 5, 2020, the district court entered a default judgment in favor of Pyankovska and against defendant-appellee Sean Abid. ER-006-12. The district court then awarded $10,000 in statutory damages to Pyankovska on that default judgment. ER-005. On June 24, 2020, the district court denied Pyankovska's timely motion to alter or amend the judgment, finally disposing of all claims of all parties. ER-003-04. Pyankovska timely appealed on July 5, 2020. ER-001. This Court has jurisdiction under 28 U.S.C. § 1291.

## Issues Presented

### I. Issues as to appellee Jones

Pyankovska sued Jones, Abid's attorney, under the Federal Wiretap Act and its Nevada-law analogue. Jones moved to dismiss Pyankovska's claims. The district court rejected all but one of Jones's grounds for dismissal but granted Jones's motion on the ground that his conduct was immunized by the *Noerr-Pennington* doctrine. Under that doctrine, certain First Amendment petitioning activity is protected from civil liability.

The issues are (a) whether Pyankovska stated federal and Nevada Wiretap Act claims against Jones and (b) whether the district court erred in dismissing those claims under the *Noerr-Pennington* doctrine.

1

## II.    Issues as to appellee Abid

Pyankovska sued Abid under the federal Wiretap Act, its Nevada statutory analogue, and Nevada common-law doctrines, including invasion of privacy and infliction of emotional distress. The district court entered a default judgment against Abid on all claims and awarded Pyankovska $10,000, the minimum statutory damages available under the federal Wiretap Act. ER-059. Abid did not appeal, so a judgment of at least $10,000 is final as to him. Pyankovska has appealed the judgment, maintaining that the $10,000 award was legally insufficient under the Wiretap Act and Nevada law.

Under the Wiretap Act, "appropriate relief includes" a range of separate categories of monetary relief for plaintiffs who, like Pyankovska, have obtained judgments under the Act. 18 U.S.C. § 2520(b). These separate categories of relief include, as relevant here, (i) statutory damages of the greater of $10,000 or $100 per day for "each day of violation"; (ii) punitive damages; and (iii) litigation costs. 18 U.S.C. § 2520(b)(2), (b)(3), (c)(2)(B). Nevada law authorizes an award of compensatory and punitive damages for invasions of the common-law rights to privacy and to be free from infliction of emotional distress.

The issues are whether, in awarding default-judgment damages against Abid of only $10,000 under the Wiretap Act, the district court erred by

 (a) not awarding $100 per day in statutory damages under the Wiretap Act for each of at least 707 days in which Abid violated the Act, 18 U.S.C. § 2520(c)(2)(B);

(b) not addressing punitive damages under the Wiretap Act, 18 U.S.C. § 2520(b)(2);

(c) not awarding Pyankovska's incurred litigation costs under the Wiretap Act, 18 U.S.C. § 2520(b)(3); and

(d) not addressing Pyankovska's damages on her Nevada common-law invasion-of-privacy and emotional-distress claims.

## Statutory Addendum

Pertinent statutory provisions appear in the addendum to this brief.

## Statement of the Case

Plaintiff-appellant Lyudmyla Pyankovska sued her former husband defendant-appellee Sean Abid and his family-law attorney, defendant-appellee John Jones, for surreptitiously recording her in her home and then using the recordings against her. Pyankovska maintains that Abid violated the federal Wiretap Act and Nevada state law in making the recordings, and that both defendants violated those laws by disclosing and using the contents of the recordings, including by submitting them to the Nevada state courts.

The district court dismissed the claims against Jones on the ground that his conduct involved First Amendment petitioning activity protected by the *Noerr-Pennington* doctrine. The suit against Abid proceeded, and the district court entered a default judgment against him. It then held that Pyankovska was entitled to $10,000 in statutory damages under the Wiretap Act but no more.

In the pages that follow, we first provide factual background and describe the proceedings below. We then explain why the claims against Jones should not have been dismissed and why Pyankovska is entitled to more than $10,000 in damages on the default judgment against Abid.

## I.    Factual background

Pyankovska and Abid divorced in 2010 in Nevada state court. ER-062. Under their divorce decree, they agreed to share legal and physical custody of their one minor child, Sasha. *Id.* Pyankovska has since married someone else. *Id*. In 2013, Abid asked the state court to award him primary custody of Sasha, but the court found no reason to change the arrangement. *Id*.

When Pyankovska's work schedule changed in 2015, she asked Abid if she could pick up Sasha earlier on her custodial days. ER-014. He refused. *Id.* He also refused to give Pyankovska Sasha's passport for a summer vacation to Europe. *Id*. Unable to obtain Abid's cooperation, Pyankovska moved the state court to appoint a parenting coordinator to resolve these issues. *Id.*; ER-062.

### A. Secret recordings and selective editing

While Pyankovska's motion was pending, Abid inserted a recording device in Sasha's school backpack to secretly tape conversations between Pyankovska and Sasha. ER-014-15. Over at least three separate dates in January 2015, ER-063; FER-101-02, Abid secretly recorded around 20 hours of private conversations between Pyankovska and Sasha. FER-101, 105-06. The recorded conversations took place in Pyankovska's home and car while

Sasha was in Pyankovska's custody. ER-015, 063. Abid was not present during any of the recorded conversations, and, importantly, none of the participants in the conversations consented to the recordings. ER-015; FER-102-03.

After obtaining the secret recordings, Abid uploaded the recordings to a computer, used software to edit the recordings, and made transcripts of portions of the recordings that he alone deemed relevant to Sasha's custody. ER-051; FER-104-05 (Abid acknowledging that he deleted 13 of the first 15 hours of recordings). Abid then destroyed the original, unaltered recordings and destroyed both the computer and recording device that had stored the original recordings. ER-051; *see also* ER-018.

**B. Use of recordings in state court and further custody proceedings**

**1.** Abid brought the transcripts to Jones, his family-law attorney. ER-081. Jones then submitted parts of the transcripts of the selectively edited recordings to the Nevada state court hearing the ongoing custody case. The transcripts were submitted as part of Abid's declaration in support of his motion for sole custody of Sasha. SER-103, 036-44. The declaration is nine pages—eight of which are verbatim excerpts of the transcripts of the secret recordings. SER-036-44, 215-23. To be clear about Jones's conduct: Without obtaining prior permission from the court or a ruling on admissibility of the transcripts, Jones unilaterally filed the transcripts of the edited recordings on the public state-court docket despite knowing that the recordings had

been made secretly and without Pyankovska's or Sasha's consent. FER-102-03.

Pyankovska objected to the transcripts' use as evidence in the state-court custody proceeding, maintaining that they were "surreptitiously obtained and selectively edited." ER-063. Generally, the federal and Nevada Wiretap Acts prohibit the intentional interception, disclosure, or use of any oral communication without the consent of at least one party to the conversation. 18 U.S.C. § 2511(1), (2)(c); *see also* NRS 200.650. Absent exceptions not relevant here, communications obtained in violation of the federal and Nevada Wiretap Acts are not admissible in court proceedings. 18 U.S.C. §§ 2515, 2517(3); NRS 179.500.

Jones argued that his submission of the transcripts was lawful because Sasha's consent to the recording should be inferred through his father, Abid, under the vicarious-consent doctrine. In limited circumstances, that doctrine allows parents to tacitly consent on behalf of their minor children if the parent has a good-faith and objectively reasonable belief that consent is in the best interest of the child and if certain factors—such as the recording's location and the parent's custodial status—favor a finding of consent. *See, e.g., Pollock v. Pollock*, 154 F.3d 601, 609-11 (6th Cir. 1998).

The state court concluded that the vicarious-consent doctrine did not apply. Abid could not consent on Sasha's behalf because, the court held, the recordings took place in Pyankovska's home, and Abid neither had custody over Sasha at the time nor the required good-faith basis for asserting

vicarious consent. ER-065. Having found that the recordings were illegally obtained, the state court held that the recordings could not be used as evidence. SER-244.

But the state court allowed the recordings to be submitted to a psychologist, whom the court had appointed to interview Sasha. SER-245. After interviewing Sasha with questions developed from the transcripts, the expert found that Pyankovska had alienated Sasha from Abid. ER-010, 081. The state court then granted Abid's request for primary physical custody, reserving visitation rights to Pyankovska. ER-064, 066.

**2.** The Nevada Supreme Court affirmed the custody determination and held that the transcripts, even if they had been obtained illegally, could be used privately by the psychologist in determining Sasha's best interests. *Abid v. Abid*, 406 P.3d 476, 481-82 (Nev. 2017).

Pyankovska then asked the Nevada Supreme Court to seal the transcripts and to require the state trial court to do the same. FER-129-30. That court granted the motion to seal, relying on the Nevada statutory analogue to the federal Wiretap Act, which prohibits "intru[sions] upon the privacy of other persons by surreptitiously … recording … any private conversation engaged in by the other persons … unless authorized to do so by one of the persons engaging in the conversation." NRS 200.650. But it held that Pyankovska would have to ask the state trial court to seal materials on that court's docket. FER-129-30. Taking the Nevada Supreme Court's cue, Pyankovska then moved to seal the transcripts in the state trial court. *See* FER-094.

Seeking to further embarrass and humiliate Pyankovska, Abid then uploaded Pyankovska's motion to seal to a public Facebook group, calling her a "bully child abuser." ER-058; FER-094.

## C. Abid's postings on Facebook

Abid posted the transcripts of the secret, non-consensual recordings on public Facebook pages, discussed their contents on Facebook, and encouraged others to further distribute them. These Facebook posts occurred from at least as early as June 10, 2017, ER-068, to at least as late as May 13, 2019, FER-094-98. On Facebook pages including "Nevada Court Watchers," SER-052, and "Parental Alienation World Wide Support Group," SER-046, Abid called Pyankovska "malicious," "pure evil," and "disgusting." SER-050.

Abid's public campaign to humiliate Pyankovska led to profane invective and harassment from strangers aimed at Pyankovska. ER-018. Facebook users referred to Pyankovska as "slick," "manipulative," SER-050, and a "Bitch [who] needs to go back to Russia." SER-051. As the district court noted, even Abid's attorney in this Wiretap Act proceeding got in on the malicious name-calling, describing Pyankovska as "[t]hat horrible Ruskie … [who] is … an absurd person who's stupid." ER-055 (ellipses in original); *see also* FER-069-71 (additional profane name-calling by Abid and his federal-court lawyer).

In 2018, Pyankovska asked Abid to respect her family's privacy and take down the publicly posted transcripts. FER-113. Abid refused. *Id.* Instead,

Abid doubled down, continuing to stimulate discussions of the transcripts online, including by posting Pyankovska's motion to seal the transcripts in the state trial court. FER-094. In posting the motion to seal, Abid called Pyankovska a "child abuser." *Id*. Within 30 minutes of Abid's posting, another user publicly uploaded the transcript of the edited recording, writing that "[t]hese are the transcripts Rude Lyud is seeking to seal." FER-096. Others then chimed in, calling Pyankovska "beyond horrid," "[t]hat crude, rude, Lyud," and "[s]hrewd, lewd, and skewed." FER-098. As discussed in more detail below (at 12-15), Abid's secret taping and public postings caused Pyankovska severe emotional distress and mental anguish, reputational damage, and physical illness. ER-019-21.

## II.  District-court proceedings below

In December 2016, Pyankovska sued Abid and Jones in the District of Nevada under the federal Wiretap Act, 18 U.S.C. § 2510 et seq., its Nevada statutory analogue, NRS 200.610 et seq., and a range of Nevada common-law doctrines, including invasion of privacy and infliction of emotional distress. SER-251-52.

### A. Dismissal of Jones

Jones moved to dismiss Pyankovska's claims, arguing that he was not liable under the federal and state Wiretap Acts for submitting the transcripts of the recordings to the state court. FER-116, 119-26.

The district court quickly disposed of several of Jones's arguments. It held that none of the exceptions to Wiretap Act liability for "good faith reliance"

on legal authority applied to Jones's submission of the transcripts. ER-085-86 (citing 18 U.S.C. § 2520). It also held that Jones's reliance on a state-law "litigation privilege" to submit the transcripts to the state court did not trump his federal obligations under the Wiretap Act. *Id.* (citing *Babb v. Eagleton*, 616 F. Supp. 2d 1195 (N.D. Okla. 2007)).

But the district court agreed with Jones's contention that his actions were protected by the *Noerr-Pennington* doctrine. ER-086. As explained in more detail below (at 30-31), that doctrine provides immunity from civil liability for certain First Amendment petitioning activity, including litigation activity. The court agreed with Jones that, under *Noerr-Pennington*, an attorney cannot be held liable under the Wiretap Act for submitting transcripts of recordings to a court, even when the recordings are obtained in violation of the Act. ER-086. The district court thus dismissed all claims against Jones. ER-086, 088.

### B. Default judgment against Abid

**1. Case-dispositive sanctions.** As indicated, Pyankovska alleged that Abid violated the federal and Nevada Wiretap Acts and Nevada common law, including its prohibitions on invasion of privacy and infliction of emotional distress. ER-069-70.

In discovery, Abid failed to provide any meaningful responses to Pyankovska's interrogatories and document requests. ER-052. The court found that Abid's discovery responses were inaccurate, ER-057-58, but granted a 60-day extension for Abid to adequately respond. ER-058.

Despite that extension, Abid "continued to deliberately disregard [his] obligations" and "flouted the rules and procedures of th[e] court." ER-058. Abid "ignored [Pyankovska]'s efforts to obtain responsive documents to critical, necessary requests...refusing to provide objections, responses, responsive production, **or even to engage in good faith meet and confer**." ER-057 (emphasis in original). As an example of Abid's contemptuous behavior, the court noted that, in an initial discovery response, Abid denied using a recording device at all, even though he admitted doing so at his deposition. ER-058. In sum, the court concluded that Abid's "conduct in discovery ha[d] been baseless and in bad faith." *Id*.

Pyankovska then moved for a default judgment under Federal Rules of Civil Procedure 37 and 55 in light of Abid's abuses of the discovery process. *See* ER-006; FER-077. She sought compensatory and punitive damages under the Wiretap Act and Nevada common law. FER-084-91. The court entered a default on all of Pyankovska's claims under Rule 37(b). ER-058-59. "[C]ase-dispositive sanctions," the court explained, "are the only feasible means of addressing defendant's ongoing discovery- and case-related violations" and his "pattern of bad faith conduct." *Id.*

In granting the default, the court also observed that despite being warned not to disclose the unlawfully obtained recordings "to anybody" and that the material "shouldn't end up online," Abid continued to post the material on Facebook. ER-053, 058; *see also* FER-074.

**2. Assessment of default damages.** The district court then instructed Pyankovska to file an accounting of her damages, as required for assessment of default-judgment damages under Rule 55(b). *See* ER-059. Pyankovska responded with her own declaration as well as declarations from her husband, Ricky Marquez; her oldest daughter, Iryna Nezhurbida; her close friend, Svetlana Mundson; and her psychologist, Dr. Nicolas Ponzo. ER-013-45. As further proof of her pecuniary and emotional losses, Pyankovska submitted exhibits containing her medical records and bills, work-performance records, and evidence of her litigation costs in this case. FER-025-41.

**a. Evidence of default damages.** The declarations explain in detail Pyankovska's emotional and physical decline resulting from Abid's secret recordings and online humiliation of Pyankovska. The declarations are detailed and specific as to the emotional and physical harm Abid inflicted on Pyankovska. *See* ER-013-45. We briefly summarize that evidence here.

**i.** Pyankovska explained that after learning that she had been secretly recorded, she felt "violated" and "afraid to speak" in her own home, and she became "paranoid that recording devices [were] still hidden at [her] home." ER-015. She was humiliated and ashamed that her coworkers, friends, and daughter had witnessed Abid's public attacks against her. ER-019. Being recorded and harassed online led Pyankovska to carry pepper spray for self-defense, install security cameras at her home, and censor her self-expression on her own social media. ER-021-22.

Pyankovska's work performance also suffered. Abid's online persecution campaign led strangers to call Pyankovska at work with harassing messages. ER-019. Her fear, anxiety, and stress distracted her from work responsibilities, sometimes causing her to "fle[e] to a nearby stairwell and br[eak] down in tears." *Id*. There were days Pyankovska missed work or came to work unfocused, leading her to miss promotion opportunities and suspend pursuit of her CPA license. ER-020, 022. Pyankovska's employer required her to complete classes on stress management to keep her job. ER-020; FER-036-40.

For months, Pyankovska lay awake at night with severe panic attacks, struggling to "take control of [her] breathing" and fearing her heart would stop or she would have a stroke. ER-016-17. Some days, she was unable to carry on a conversation, get out of bed, or eat a proper meal. ER-021. At times, Pyankovska thought "it is better not [to] wake one day so this nightmare and shame will not chase me for the rest of my life." ER-017. She suffered physically from this extreme stress, including chest pains, severe acne, jaw pain, and weight gain. *Id*.

**ii.** Pyankovska's husband, daughter, and friend also described Pyankovska's emotional and physical decline. Her family watched her transform from a "very outgoing," "confident," and "happy person full of life" to someone sad and depressed, preoccupied and unfocused, suffering from insomnia and panic attacks, and experiencing chronic anxiety-induced

stomach aches—a "shell of the person she once used to be." ER-026-27, 030-31.

Pyankovska "would call [her friend Mundson] crying every day." ER-035. Consumed with stress from the online harassment, the ongoing court cases, and her family's wellbeing, Pyankovska lost interest in the physical and social activities she used to love, such as going to the gym and meeting friends. ER-027, 030, 035. At one point before Pyankovska began receiving medical attention, Mundson could not reach her for about four months and was "afraid that [Pyankovska would] do something to herself." ER-035. Her husband, Marquez, explained that his wife was "pushed all the way to the edge" and "lost [her] sense of life," and that "[he] truly thought [he] will lose [her]." ER-027. Iryna was "afraid the stress would eventually kill" her mom. ER-030.

**iii.** Pyankovska was prescribed Ambien and Xanax for her anxiety, panic attacks, and insomnia. ER-018. She began seeing Dr. Ponzo for psychotherapy. *Id.*; ER-040-42 (¶¶ 8-10). His expert declaration documents Pyankovska's severe "emotional distress and anguish," including her depressive episodes, hypervigilance, and negative flashback experiences. ER-041-42 (¶ 10). Dr. Ponzo witnessed Pyankovska's feelings of violation, shame, humiliation, hopelessness, and helplessness. ER-042 (¶ 10). He confirmed that her mental suffering caused physical illness including insomnia, chest and abdominal pain, and appetite disturbances. *Id.* He also confirmed that her mental suffering affected her personal and professional

life, describing Pyankovska's diminished interests in activities, social withdrawal, and functional impairments at work. *Id.*

**iv.** Pyankovska's medical expenses from therapy sessions with Dr. Ponzo totaled $3,125. ER-022. Pyankovska also submitted receipts evidencing her legal expenses, totaling $1,413.25 including the district-court filing fee, service expenses, and other litigation costs. ER-023; *see also* FER-042-64.

**v.** Abid did not submit any declarations or other evidence to counter Pyankovska's damages showing.

**b. The district court's ruling on damages.** After having received Pyankovska's detailed accounting, the court then ruled on her request for awards of statutory damages, punitive damages, and litigation costs under the Wiretap Act, and compensatory and punitive damages on her Nevada common-law claims. ER-059; FER-077, 088-91.

**i.** The court awarded only $10,000, ER-003, the minimum statutory damages authorized by the Wiretap Act. The Act authorizes statutory damages of $10,000 or $100 a day for each day of violation, whichever is greater. 18 U.S.C. § 2520(c)(2)(B). Yet, despite evidence of Abid's Facebook posts over a period of at least two years, the court did not even consider an award based on each day of violation.

The court awarded no other remedies under the Wiretap Act, though the Act separately authorizes punitive damages and litigation costs. 18 U.S.C. § 2520(b)(2)-(3). And despite Pyankovska's submission of multiple declarations detailing her emotional and physical suffering, the court did not

award any compensatory or punitive damages on her Nevada common-law claims.

**ii.** Pyankovska then moved to alter or amend the judgment, asking the district court to award the elements of damages that it had overlooked: punitive damages and litigation costs under the Wiretap Act and compensatory and punitive damages on her common-law claims. FER-003-04. The district court denied the motion without responding to Pyankovska's particular points, stating only that it had "considered all the arguments and accounting of the parties in making its [original] determination." ER-004.

## C. This appeal

Pyankovska appealed both the district court's grant of Jones's motion to dismiss and its decision limiting the damages on the default judgment against Abid to $10,000. ER-001. Abid did not appeal, rendering final a default judgment of at least $10,000 against him.

Pyankovska then filed a pro se informal brief addressing all issues as to Jones and Abid. Doc. 06. Jones responded with a brief defending the judgment in his favor on *Noerr-Pennington* grounds. Doc. 14. Abid did not file a brief, instead adopting Jones's brief (which has nothing to do with the issues raised by the default judgment against him). Doc. 16. This Court then appointed undersigned pro bono counsel to represent Pyankovska and scheduled further briefing. Doc. 24.

## Summary of the Argument

### I. Appeal as to Jones

The district court erred in dismissing Pyankovska's federal and state Wiretap Act claims against Jones. Jones is liable under the Acts, and neither the *Noerr-Pennington* doctrine nor other First Amendment or common-law principles immunize Jones from liability.

Abid secretly recorded conversations between Pyankovska and Sasha in violation of the Acts. No party to the conversations actually consented to the recordings, rendering the recordings unlawful. Jones's argument that Abid consented on behalf of Sasha under the doctrine of vicarious consent is flatly wrong. Abid could not have tacitly consented for Sasha because Sasha was in Pyankovska's custody when the recordings occurred. No court has suggested that a non-custodial parent may consent for a child while in a custodial parent's custody. Jones thus had reason to know that the recordings were illegal, and his disclosure of the transcripts in the open state-court record therefore violated the Acts.

The *Noerr-Pennington* doctrine does not apply to the Wiretap Acts because they expressly prohibit the disclosure of unlawfully obtained communications, including specifically in court proceedings. 18 U.S.C. §§ 2511(1)(c)-(d), 2515; NRS 179.500, 200.650. Thus, Jones would have had the right to use the recordings in court only if the Wiretap Acts' prohibition on the use of illegal recordings is unconstitutional as applied to Jones's conduct. Under settled First Amendment principles, the Acts are constitutional as applied to that conduct, and Jones may be held liable. And as the district

court recognized, Jones's purported common-law defenses—which Jones variously labels the zealous-advocacy, litigation-privilege, and clean-hands defenses—do not allow him to escape liability under supreme federal law, the Wiretap Act.

## II. Appeal as to Abid

The district court made several legal errors in awarding only $10,000 in damages on Pyankovska's default judgment against Abid. If statutory damages are awarded under the federal Wiretap Act, the district court must award $100 per day for each day of violation or $10,000, whichever is greater. The district court erroneously awarded Pyankovska only $10,000, even though Abid violated the Act over at least 707 days.

The district court failed to address Pyankovska's request for punitive damages under the Wiretap Act. This was error because Abid maliciously disseminated the transcripts and their contents on social media for years after he was awarded primary physical custody of Sasha, causing Pyankovska grave harm. The district court also failed, without any explanation, to award Pyankovska's litigation costs under the Act.

Finally, the district court erred in ignoring Pyankovska's request for damages on her Nevada common-law invasion-of-privacy and emotional-distress claims. Nevada law authorizes compensatory and punitive damages on those claims, and Pyankovska submitted detailed evidence of her emotional and physical suffering stemming from Abid's conduct.

In sum, reversal and remand is required for the district court to assess Pyankovska's damages under the Wiretap Act and Nevada law.

## Standards of Review

### I. Appeal as to Jones

The district court's grant of Jones's motion to dismiss under Rule 12(b)(6) is reviewed de novo. *See Curtis v. Irwin Indus., Inc.*, 913 F.3d 1416, 1151 (9th Cir. 2019). This Court should "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," here Pyankovska. *Id.* (citation omitted).

### II. Appeal as to Abid

A district court's award of damages is reviewed for an abuse of discretion. *See Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1495 (9th Cir. 1995). An error of law, such as the district court's failure here to even consider all of Pyankovska's claims for damages—statutory, compensatory, and punitive—is, by definition, an abuse of discretion. *See Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1137 (9th Cir. 2011) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)).

A denial of litigation costs is reviewed for an abuse of discretion. *See Ass'n of Mex.–Am. Educators v. State of California,* 231 F.3d 572, 592 (9th Cir. 2000). If, as here, a district court does not "specify reasons" for denying costs, the court has abused its discretion. *Id.* at 591-92.

**Argument**

## I. The district court erred in dismissing Pyankovska's federal and state Wiretap Act claims against Jones.

Defendant Jones is liable under the federal Wiretap Act, 18 U.S.C. § 2510 et seq., and its Nevada analogue, NRS 200.610 et seq., because (a) Jones violated those Acts; (b) he is not immunized by the *Noerr-Pennington* doctrine or otherwise protected by the First Amendment; and (c) his remaining arguments fail.

### A. Jones is liable under the federal and Nevada Wiretap Acts for disclosing communications obtained in violation of the Acts.

#### 1. Background law

**a. The Acts' basic prohibition and exceptions.** The federal and Nevada Wiretap Acts generally prohibit any interception of any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a); NRS 200.620, 200.650. Interception is the acquisition of the contents of any communication by any device. 18 U.S.C. § 2510(4).

There are only two statutory exceptions. The first is court authorization: when a court authorizes an investigative or law-enforcement officer to conduct electronic surveillance in the normal course of official duties while investigating certain offenses. 18 U.S.C. §§ 2511(2)(e), 2516-18; NRS 179.460. This exception does not apply here.

The second is consent: A communication may lawfully be intercepted by a party to the communication or when at least one party to the communication has given prior consent to the interception. 18 U.S.C. §

20

2511(2)(c)-(d); NRS 200.650. Here, it is undisputed that neither party to the conversations—Pyankovska and Sasha—actually consented to the recordings by their words or actions. ER-062; FER-103.

In interpreting the federal Act, some courts have adopted the doctrine of vicarious consent, allowing a parent to silently consent on behalf of her minor child if, and only if, the parent has a good-faith and objectively reasonable belief that consent is in the best interest of the child *and* if other factors—such as the child's age, the recording's location, the type of harm at issue, and whether the "consenting" parent has physical or legal custody— favor a finding of consent. *See Pollock v. Pollock*, 154 F.3d 601, 610 (6th Cir. 1998); *Wagner v. Wagner*, 64 F. Supp. 2d 895, 895-96 (D. Minn. 1999). Neither this Court nor the Nevada courts have ever embraced the vicarious-consent doctrine.

As explained further below (at 24-26), this Court does not have to decide whether to accept the vicarious-consent doctrine as a general proposition because it never extends to the circumstances here: when the purportedly consenting parent did not have custody of the child at the time of the recording.

**b. The Acts' prohibitions on disclosure and use.** Of special salience here, in addition to prohibiting interception itself, the Acts also prohibit the disclosure and use of the contents of any unlawfully intercepted communication. 18 U.S.C. § 2511(1)(c)-(d); NRS 200.650. The "contents" of a communication include "any information concerning the substance,

purport, or meaning of that communication." 18 U.S.C. § 2510(8). Thus, the parties here do not dispute that the Acts apply to the disclosure or use of transcripts of unlawfully intercepted conversations, such as the kind of transcripts made by Abid and disclosed and used by both Abid and Jones.

Under the Acts, no part of the contents of any illegally intercepted communication—or any evidence derived from them—may be submitted in any governmental proceeding, including in any trial, hearing, or other court proceeding. 18 U.S.C. § 2515; *see* NRS 179.500 (similar).

**c. The Acts' remedies.** Violations of the Acts can lead to serious criminal sanctions, including imprisonment and fines. 18 U.S.C. § 2511(4)(a); NRS 200.690. The Acts also establish a "civil action" in favor of any person whose oral communication "is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a); *see* NRS 200.690 (similar).

"Appropriate relief" in a federal civil case includes equitable relief, damages, punitive damages, and reasonable attorney's fees and "other litigation costs." 18 U.S.C. § 2520(b). Damages are the "greater of" actual damages or "statutory damages of whichever is greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2); *see* NRS 200.690(1)(b) (similar). So, for instance, for a single violation, a plaintiff may be awarded declaratory and injunctive relief, actual or statutory damages, punitive damages, attorney's fees, and litigation costs.

We next show that Jones violated the federal and state Wiretap Acts because (a) Abid's recordings and (b) Jones's subsequent disclosure of the recordings violated the Acts.

### 2. Jones intentionally disclosed recordings he knew were illegally intercepted, violating the federal and state Acts.

#### a) The recordings violated the Acts.

For Jones's disclosure of Abid's recordings to violate the Wiretap Acts, the recordings must have been intercepted unlawfully by Abid in the first place. Any intentional interception of any oral communication violates the federal and state Acts. *See* 18 U.S.C. § 2511(1)(a); NRS 200.620, 200.650. An interception is the "acquisition of contents of any … oral communication through the use of any electronic … device." 18 U.S.C. § 2510(4); *see* NRS 179.430 (similar). Abid secretly placed an electronic recording device inside Sasha's school backpack. ER-081. He did so for the express purpose of intercepting Pyankovska's oral communications with Sasha. *Id.* Therefore, Abid intentionally intercepted Pyankovska's oral communications in violation of the Acts.

Jones argued below that he cannot be liable for his disclosures because the vicarious-consent doctrine authorized Abid to tacitly consent to the recordings for his minor child, Sasha, thus establishing the minimum consent necessary to excuse Abid from liability under the Acts. ER-084. The district court correctly held, ER-084-85, as the state court had before it, SER-244, that vicarious consent was lacking for two separate, independently

dispositive reasons: (1) the vicarious-consent doctrine does not apply on the facts pleaded here, and (2) Abid did not have a good-faith belief that consent was in Sasha's best interests.

**i.** First, vicarious consent does not extend to recordings made in the non-consenting party's home, where a heightened expectation of privacy is well-established, and the purportedly consenting parent did not have physical custody of the child at the time of the recording. *See* ER-084-85 (district-court opinion). Thus, for instance, the doctrine does not apply when a father, purportedly consenting for a child, places a recording device in the mother's home. *Wright v. David L*, 453 S.E.2d 646, 654 (W. Va. 1994). As the Nevada state court recognized, all courts that have adopted the vicarious-consent doctrine have done so only in situations involving the "recording of **telephone conversations** by a parent on behalf of a minor child **in that parent's custody.**" SER-242 (emphasis in original); *see also* SER-240-42 (discussing decisions).

Here, Abid placed a recording device in Sasha's backpack, without Sasha's knowledge, and intercepted mother-son communications that occurred in Pyankovska's home and car while Sasha was in Pyankovska's sole custody. ER-084-85, 018. This conduct is not covered by the vicarious-consent doctrine because, as just explained, even assuming that Abid could tacitly consent for Sasha in some circumstances, that consent could not have occurred when Sasha was in Pyankovska's custody and in her home.

That the vicarious-consent doctrine applies only when the consenting parent has custody of the child is logical. *See State v. Spencer*, 737 N.W.2d 124, 130-31 (Iowa 2007); *Anonymous v. Anonymous*, 558 F.2d 677, 679 (2d Cir. 1977). As legal guardians, parents generally have the capacity to legally consent on their children's behalf. *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000). But the presumption that either parent can consent for the child at any time changes when the parents are divorced and split the legal and physical custody of their child. *See* Elisabeth Pride, *Down the Rabbit's Hole: Baby Monitors, Family Movies and Wiretap Law*, 23 J. Am. Acad. Matrim. L. 131, 143-44 (2010). And when divorced parents with split custody disagree on whether their child legally consents to something, the child cannot simultaneously comply with both parents' wishes. *Id.* at 143. Either the child legally consents or does not.

Thus, to infer a child's consent when his divorced parents disagree, one parent's legal consent must preempt the other's. And in the vicarious-consent context, that preemption depends on which parent had custody of the child at the time the communications were intercepted. *See Williams v. Williams*, 581 N.W.2d 777, 780 (Mich. Ct. App. 1998); *see also* Elisabeth Pride, 23 J. Am. Acad. Matrim. L. at 143-44.

But here, Abid asserts that he could legally consent for Sasha despite not having custody over Sasha when the consent was needed. This argument does not make sense. It is illogical that the parent who had custody of the child and did not consent to the child being recorded could be overridden

by the parent lacking custody at the relevant time. *See, e.g.*, *Wright*, 453 S.E.2d at 653-54. Rather, deferring to the parent who has custody at the time of a secret recording makes the vicarious-consent doctrine workable in one-party-consent states, serving as a tiebreaker when the divorced parents are at odds and have equal legal power to give or refuse consent on the child's behalf. *See also* Richard C. Turkington, *Protection for Invasions of Conversational and Communication Privacy*, 82 Neb. L. Rev. 693, 711-13 (2004).

**ii.** Second, to provide vicarious consent, a parent must also have an objective good-faith (and, thus, non-pretextual) belief that consent is in the best interests of the child. *See Pollock v. Pollock*, 154 F.3d 601, 610, 612 (6th Cir. 1998). Jones argued below that Abid's worries about parental alienation provided the requisite good faith to excuse his conduct. But Abid hid a recording device in Sasha's backpack, without anyone else's knowledge or actual consent, *before* obtaining the recordings that purportedly demonstrated parental alienation, destroying any claim of good faith. Moreover, Abid then edited the recordings, deleted the editing software, and destroyed the computer that housed the original recordings. ER-051. Therefore, the district court—as did the state court before it—correctly rejected Abid's assertions of good faith. ER-084-85; SER-244.

### b) Jones's disclosure violated the Acts.

As shown above, Abid illegally intercepted the oral communications. Piggybacking on Abid's violation, Jones's disclosure then violated the federal and state Wiretap Acts, which, as explained above (at 21-22), create

civil liability for anyone who intentionally and knowingly *discloses* illegal interceptions. 18 U.S.C. § 2520(a); NRS 200.690(1)(b).

First, Jones intentionally disclosed the recordings when he submitted the transcripts to the state court, making the contents of the recordings known to the court and to the public. *See Pollock*, 154 F.3d at 605; *Marsh v. Curran*, 362 F. Supp. 3d 320, 327-28 (E.D. Va. 2019). Jones contends that he just "did his job" as lawyer and asked the state court to rule on the admissibility of the recordings. SER-192.

This assertion is flatly incorrect. Jones could have done his job, without violating the Acts, by explaining to the state court that his client had secretly taped his ex-wife and son in her home and then asking the court for permission to file the declaration containing the edited transcripts. He did not do that. He did not even proffer the illegal transcripts under seal and ask the court to rule on their admissibility or on the question whether they could be filed publicly. Rather, acting on his own and in the face of the Wiretap Acts' express prohibitions on disclosures of the contents of unlawfully obtained recordings, Jones brazenly submitted the transcripts into a public court record. SER-102-03.

This conduct was unlawful. Lawyers do not have license to disseminate the contents of unlawfully intercepted communications just because a court has yet to "conclusively rule that the initial interception violated the law." *Nix v. O'Malley*, 160 F.3d 343, 348 (6th Cir. 1998) (noting that holding otherwise would "contravene[] common sense"); *cf. SEC v. Rajaratnam*, 622

F.3d 159, 185-86 (2d Cir. 2010) (vacating district-court order that disclosed intercepted conversations for discovery purposes prior to a ruling on the legality of the interceptions).

Second, both Acts require that, to be liable, a person who discloses the contents of recordings must know or have reason to know the communication was obtained in violation of the Acts—that is, without consent or court-ordered authorization. 18 U.S.C. § 2511(1)(c)-(d); NRS 200.690(1)(b). Jones had the requisite knowledge that the recordings were obtained illegally.

In the district court, Jones offered the mere existence of the vicarious-consent doctrine as evidence that he lacked knowledge that his client's surreptitiously obtained recordings violated the Wiretap Act. *See* SER-194-95. But the federal Act explicitly enumerates three exceptions to liability: good-faith reliance on (1) a court order or other governmental authorization; (2) recordings made at the request of a law-enforcement officer; or (3) exemptions for electronic communication services and certain computer trespassers. 18 U.S.C. § 2520(d). The Act does not create an exception for reliance on vicarious consent, or for any mistake of law, so this Court should not read that exception into the statute.

Moreover, when Jones received the transcripts of the illicit recordings, neither this Court nor the Nevada state courts had adopted the vicarious-consent doctrine, let alone applied it in circumstances like those here. Indeed, Jones "has offered no authority to suggest that [those] courts are

inclined to accept or have even considered the applicability of the vicarious consent doctrine." *See Fruit v. State*, 238 P.3d 812, No. 48296, at 4 (Nev. Mar. 28, 2008) (excluding recordings of communications between a child and her relatives because the courts in Colorado, where the interceptions occurred, had never accepted or considered the validity of the doctrine).[1]

In any case, as explained above (at 24-26), no court has *ever* applied the doctrine when a parent (here, Abid) purportedly consented for a minor child (here, Sasha) while that child was in the custody and home of the other parent (here, Pyankovska). Jones admits that, before disclosing the transcripts to the state court, Abid told him that he (Abid) had obtained Pyankovska's oral communications, not by her consent, but by hiding a recording device in Sasha's backpack before Sasha went *to his mother's home*. SER-192. Thus, even if Jones may reasonably rely on the adoption of vicarious consent in other jurisdictions as a prophecy of what Nevada law may someday be—itself a dubious assumption—Jones knew or had reason to know that the vicarious-consent doctrine could not possibly apply on the facts here.

## B. Neither *Noerr-Pennington* nor other First Amendment principles immunize Jones from Wiretap Act liability.

After holding that Jones violated the federal Act and rejecting his other defenses (discussed below at 34-36), the district court granted Jones's motion

---

[1] Available at https://caseinfo.nvsupremecourt.us/document/view.do?csNameID=16066&csIID=16066&deLinkID=187508&onBaseDocumentNumber=08-07682.

to dismiss on the ground that his disclosures of the unlawfully obtained recordings were protected by the *Noerr-Pennington* doctrine. That decision is wrong and should be reversed.

**1.** The *Noerr-Pennington* doctrine provides immunity from civil liability in narrow circumstances when the defendant is exercising its right to petition the government for redress of grievances. For instance, in the seminal case, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), the Supreme Court held that a corporation could not be held liable under the Sherman Antitrust Act for lobbying governmental officials, even if done for an anticompetitive purpose, because the Sherman Act did not expressly contemplate that liability. Thus, the Court could not "lightly impute to Congress an intent to invade these [First Amendment] freedoms." *Id.* at 137-38; *see also United Mine Workers v. Pennington*, 381 U.S. 657, 669 (1965).

But the *Noerr-Pennington* doctrine is not an absolute immunity from statutory liability for all petitioning activity. Rather, the question is whether the relevant impairments on the right to petition were expressly considered by the Legislature in the particular enactment at issue. If not, as in *Noerr* and *Pennington* themselves, the courts must tread lightly and avoid reading into the statute legislative intent to impair petitioning activity. If, on the other hand, the Legislature expressly considered and forbade the relevant conduct, then there is no *Noerr-Pennington* immunity from liability. *See Noerr*, 365 U.S. at 136 (noting that the Sherman Act did not expressly forbid

the conduct in question); *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 540 (9th Cir. 2022).

**2.** With these principles in mind, the *Noerr-Pennington* doctrine does not apply to the Wiretap Acts because they *explicitly* prohibit the disclosure and use of unlawfully obtained communications in any manner, including specifically in court proceedings. 18 U.S.C. §§ 2511(1)(c)-(d), 2515; NRS 179.500, 200.650. And the purpose of the Acts' prohibitions on disclosing or using illegally obtained oral communications in court proceedings is well settled: to "protect the privacy of communications" and "ensure that the courts do not become partners to illegal conduct." *Gelbard v. United States*, 408 U.S. 41, 51 (1972).

The Wiretap Act was meant to prohibit the very tactics Abid and Jones used in this case. Congress knew that divorcing spouses were increasingly using surveillance techniques to gain the upper hand in marital litigation. *United States v. Jones*, 542 F.2d 661, 666-69 (6th Cir. 1976). Senator Hruska, one of the Act's co-sponsors, announced that the Act would impose a "broad prohibition [] on private use of electronic surveillance, particularly in domestic relations" cases. *Id.* at 669 (citing S. Rep. No. 90-1097, at 151 (1968)). This prohibition would act like an exclusionary rule, denying the perpetrator of a Wiretap Act violation "the fruits of his unlawful actions in all civil and criminal proceedings." *Gelbard*, 408 U.S. at 50.

**3.** Jones has thus used *Noerr-Pennington* as a smoke screen. Jones blatantly violated the Acts by filing the transcripts on a public docket, without asking

for permission or seeking a seal, more than a month before asking for an admissibility ruling. SER-036-44, 103, 215-23, 226-27. Therefore, the real question is not the one posed in the *Noerr-Pennington* line of cases, but, rather, whether the Wiretap Acts' express prohibitions on the disclosure and use of the contents of unlawfully intercepted material (including in court proceedings) are themselves constitutional under the First Amendment as applied to the circumstances here.

They are. "It is well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972). And it is understood that the government may properly restrict petitioning activity. Various impediments on activity in court—filing fees, Rule 11 sanctions, rules of evidence, discovery restrictions, *see Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33-37 (1984), and even page limits in briefs—all validly impair the right to petition.

The Supreme Court made this point in *California Motor*, observing that "First Amendment rights may not be used as the means or the pretext for achieving substantive evils"—such as the disclosure of surreptitiously recorded communications—"which the legislature has the power to control." 404 U.S. at 614 (citation omitted). This Court did as well when it indicated that the First Amendment right to petition does not immunize a defendant from liability "for any and all discovery abuse." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1059 (9th Cir. 2004). In sum, these are restrictions on

court procedure that "no one would seriously challenge under the First Amendment." *See* Kathleen M. Sullivan, *The Intersection of Free Speech and the Legal Profession: Constraints on Lawyers' First Amendment Rights*, 67 Fordham L. Rev. 569, 569 (1998).

**4.** The Supreme Court has extended First Amendment protection to a Wiretap Act violation only once, in *Bartnicki v. Vopper*, 532 U.S. 514 (2001). *Bartnicki*'s narrow holding afforded First Amendment protection only because the illegally intercepted communications—relating to already contentious and highly publicized teacher-salary negotiations between a teachers' union and the local school board—were on a matter of public concern. *Id.* at 525, 534. Thus, there, the First Amendment immunized media defendants that published the intercepted communications because the interest in public debate over the teachers' salaries outweighed any intrusion on privacy. *Id.* at 533-35.

This case is poles apart from *Bartnicki.* Jones is not a member of the media, but a lawyer for a party who unlawfully intercepted communications to advance his personal interests in a child-custody fight—a matter of private, not public, concern. *See, e.g., Butler v. Bd. of Cnty. Comm'rs for San Miguel Cnty.*, 920 F.3d 651, 664 (10th Cir. 2019) (holding the state's general concern for child welfare and the fair resolution of child-custody matters did not transform a private child-custody matter into one of public concern); *Baird v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, 809 Fed. App'x 308, 311 (6th Cir. 2020) (finding a child-custody proceeding was "a matter of personal interest,

not one of public concern"). The private interest in family-court proceedings is underscored by a provision of Nevada law that requires the sealing of most family-court filings on any party's request. NRS 125.110(2).

If a mundane (even if contentious) family-law custody dispute were considered a matter of public concern, thus blessing the unlawful disclosure of the communications at issue here, the distinction between public concern and private concern would no longer exist. *See also Quigley v. Rosenthal*, 327 F.3d 1044, 1066-68 (10th Cir. 2003). *Bartnicki*'s narrow exception would extend to nearly any case, effectively negating the Wiretap Act's prohibition on the disclosure and use of unlawfully intercepted communications. *See Bartnicki*, 532 U.S. at 540 (Breyer, J., concurring) (emphasizing that even though *Bartnicki*'s narrow holding protected "publication of intercepted information of a special kind," the Court did "not create a 'public interest' exception that swallows up the statutes' privacy-protecting general rule").

In sum, because the conversations between Pyankovska and Sasha were not matters of public concern, the Wiretap Acts' prohibitions on the disclosure and use of recordings of those conversations does not impermissibly infringe on Jones's First Amendment rights.

## C. Jones's remaining arguments fail.

Jones argues that his disclosure of the intercepted communications in violation of the Wiretap Act is protected by various common-law defenses, which he has denominated as the zealous-advocacy, litigation-privilege, and

clean-hands defenses. *See* Doc. 14 at 22-34. The district court rejected these arguments, and this Court should too. ER-083-86.

Jones argues that, as an attorney, he was obligated to zealously represent Abid and thus his submission of the intercepted conversations was permissible. Doc. 14 at 31. But he has no greater rights than Abid, his client. Put another way, nothing in the Wiretap Act "affords attorneys special treatment." *United States v. Wuliger*, 981 F.2d 1497, 1505 (6th Cir. 1992). The Act's text prohibits "any person"—not "any person except a lawyer"—from knowingly disclosing or using the contents of illegal interceptions, including in judicial proceedings. 18 U.S.C. §§ 2511(1), 2515; *Marsh v. Curran*, 362 F. Supp. 3d 320, 327 (E.D. Va. 2019); *United States v. Crabtree*, 565 F.3d 887, 889 (4th Cir. 2009). Interceptions, disclosures, and uses of illegally intercepted oral communications and their contents are thus "flatly prohibited." *Gelbard v. United States*, 408 U.S. 41, 46 (1972). Put otherwise, "[z]ealous defense of a client does not permit law-breaking." *Nix v. O'Malley*, 160 F.3d 343, 353 (6th Cir. 1998).

Similarly, the Wiretap Act does not recognize a general litigation privilege for attorneys. The Act permits the disclosure of intercepted communications in judicial proceedings—a litigation privilege of sorts—but only in narrow circumstances not applicable here. 18 U.S.C. §§ 2515, 2517(3). As already shown (at 21-29), Abid unlawfully intercepted Pyankovska's communications with Sasha, and Jones disclosed these illegally intercepted communications in court, and thus the Wiretap Act preempts any common-

law litigation privilege. *See Babb v. Eagleton*, 616 F. Supp. 2d 1195, 1207 (N.D. Okla. 2007); *Heggy v. Heggy*, 944 F.2d 1537, 1541 n.8 (10th Cir. 1991); *Kratz v. Kratz*, 477 F. Supp. 463, 475 (E.D. Pa. 1979).

Finally, this Court has already rejected a "clean hands" exception, which would allow the introduction of the contents of illegally intercepted communications when the introducing party did not participate in the interception itself. *See Chandler v. U.S. Army*, 125 F.3d 1296, 1302 (9th Cir. 1997); *United States v. Smith*, 155 F.3d 1051, 1059 n.15 (9th Cir. 1998); *accord*, *e.g.*, *Crabtree*, 565 F.3d at 889-91 ("The statute seems to clearly and unambiguously prohibit the use in court of improperly intercepted communications; we simply see no gaps or shadows in the language that might leave lurking a clean-hands exception."); *Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998). A "clean hands" exception cannot be squared with the Wiretap Act, which prohibits not only interception, but disclosure and use as well. 18 U.S.C. § 2511(1)(c)-(d).

\* \* \*

For all these reasons, Pyankovska states a claim against Jones, and this Court should reverse and remand for further proceedings.

## II. The district court failed to award legally appropriate damages on Pyankovska's default judgment against Abid under both the Wiretap Act and Nevada common law.

The issuance of a final default judgment involves a two-step process: (1) an initial grant of a default judgment and (2) a determination of damages. Fed. R. Civ. P. 37(b)(2)(A)(vi), 55(b)(2); *see Eitel v. McCool*, 782 F.2d 1470, 1471

(9th Cir. 1986). Here, the default was entered under Federal Rule of Civil Procedure 37 based on Abid's discovery abuses. ER-056-59; *see Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410-11 (9th Cir. 1990). In considering the default judgment, this Court "takes the well-pleaded factual allegations in the complaint as true." *DirecTv, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (internal quotation marks and citation omitted).

Because the district court entered a default judgment against Abid, and Abid did not appeal, Abid's liability is final on all of Pyankovska's claims. Thus, only the damages calculation is at issue.

As the district court did here, ER-006, a court may take evidence under Federal Rule of Civil Procedure 55(b) to determine damages on a default judgment. 10A Wright & Miller, *Federal Practice and Procedure* § 2688 (4th ed. 2021). When the amount claimed is not easily discerned based on the existing record, the court may rely on declarations submitted by the parties. *Id.* § 2688.1; *Lalangan v. Pennington*, 2022 WL 504477, at *6 (D. Ariz. Feb. 18, 2022); *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (considering declarations and awarding compensatory and punitive damages without an evidentiary hearing). Pyankovska provided evidence, including four detailed declarations and documentary evidence, accounting the damages and litigation costs she incurred under the Wiretap Act and Nevada law. *See* ER-013-45; FER-031-34, 042-64. Abid did not submit any evidence disputing Pyankovska's accounting.

As we now explain, despite Pyankovska's submissions, the district court erroneously awarded only $10,000 in statutory damages, the minimum authorized under the Wiretap Act, ER-003, and failed to award the damages and costs to which Pyankovska is entitled under both the Act and Nevada common law. This Court should reverse and remand for an appropriate calculation of damages.

## A. The district court erred in awarding Pyankovska only $10,000 under the Wiretap Act.

### 1. Pyankovska is entitled to at least $70,700 in statutory damages under the Wiretap Act.

**a.** Once the district court held that Pyankovska was entitled to statutory damages under the Wiretap Act, it was required to award the "greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2)(B). The district court believed that because the $10,000 statutory award was greater than Pyankovska's *actual* damages, the damages analysis should stop there. ER-011. But that understanding is incorrect. When awarding statutory damages, actual damages are irrelevant. *See* 18 U.S.C. § 2520(c)(2). The only relevant statutory-damages question is whether the minimum $10,000 award or the $100-per-day award yields a higher amount. *Id.* § 2520(c)(2)(B). Pyankovska is thus entitled to an award of greater than $10,000 if Abid violated the Wiretap Act on more than 100 days. *Id.* The district court erred as a matter of law in not even asking, let alone answering, that question.

We begin with accepted guiding principles. First, because Abid's liability is final, Pyankovska need only show that Abid's Wiretap Act violations

occurred on more than 100 days to prove that her statutory damages exceed the $10,000 award. Second, each day that a person's "wire, oral, or electronic communication is intercepted, disclosed, *or* intentionally used" in violation of the Wiretap Act counts as a day in the $100-per-day damages calculation. 18 U.S.C. § 2520(a) (emphasis added). Third, the damages calculation is based on the number of days the Act was violated, not just the first day on which any violation occurred. *See Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148-49 (9th Cir. 2020); *Smoot v. United Transp. Union*, 246 F.3d 633, 645 (6th Cir. 2001).

**b.** Applying these principles here, Abid violated the Wiretap Act over at least 707 days by (1) intercepting Pyankovska's conversations with Sasha using a recording device, (2) disclosing contents of the recordings in a declaration submitted to the state court, and (3) disclosing and intentionally *using* the transcripts by posting them and leaving them available on various public Facebook groups for approximately two years. 18 U.S.C. §§ 2520(a); 2511(1)(a), (c)-(d).

Abid does not dispute that he intercepted Pyankovska's conversations with Sasha using a recording device. FER-100-02; *see* 18 U.S.C. §§ 2510(4)-(5), 2511(1)(a). These recordings took place over three days: January 20, 21, and 26, 2015. ER-063; FER-101-02.

Abid not only illegally intercepted Pyankovska's private communications with Sasha, but also disclosed and used their contents for years in state-court proceedings and on social media. Abid's filing in state court, which

contained portions of the transcripts, marks another day of violation because Abid disclosed the intercepted contents from Pyankovska and Sasha's conversations knowing that neither party had consented to the recordings. 18 U.S.C. § 2511(1)(c); SER-085; *see Bess v. Bess*, 929 F.2d 1332, 1334 (8th Cir. 1991); *Heggy v. Heggy*, 944 F.2d 1537, 1542 (10th Cir. 1991); *Rodgers v. Wood*, 910 F.2d 444, 446, 449 n.3 (7th Cir. 1990), *overruled in part on other grounds by DirecTv, Inc. v. Barczewski*, 604 F.3d 1004 (7th Cir. 2010).

Abid also disclosed and used the transcripts by posting them and leaving them available on public Facebook pages between at least June 10, 2017, and May 13, 2019. ER-068; FER-094-98; *see* 18 U.S.C. § 2511(1)(c)-(d). Because the Act imposes "$100 a day [in damages] for each day *of* violation," these 703 days, all of which involve at least a disclosure or use violation, count toward the statutory-damages total. 18 U.S.C. § 2520(c)(2)(B) (emphasis added).

Each day that Abid posted the transcripts online is a disclosure violation. 18 U.S.C. § 2511(1)(c); *Disclosure*, Black's Law Dictionary (11th ed. 2019) (defining "disclosure" as "[t]he act or process of making known something that was previously unknown"). And most significantly for present purposes, Abid's posting of the illegal transcripts and their contents online were not just disclosures, but also *uses* under the Wiretap Act.

Here, Abid used the contents of the recordings both to publicly expose Pyankovska's allegedly poor parenting and to incite public name-calling, labeling Pyankovska "malicious," "pure evil," and "disgusting." SER-050; *see Use*, Black's Law Dictionary (11th ed. 2019) (defining "use" as "[t]o

employ for the accomplishment of a purpose; to avail oneself of"). Abid tried to maximize viewership of the illegal transcripts, and thus the humiliation of Pyankovska, by sharing them on public Facebook groups, which allow "anyone on or off Facebook" to see the posts, comments, and shared material in the groups. *See* Facebook, *What's the difference between a public and private Facebook group and how do I change the privacy setting?*[2]

Moreover, Abid refused Pyankovska's request to take down the Facebook posts because he wanted "[t]he world" to see the "vile and disgusting" transcripts. FER-113. Abid has also taken advantage of the transcripts' availability in court records, reminding Facebook readers that "[t]he transcripts are public record. Take a look for yourself." SER-046. When Pyankovska filed a motion to seal the transcripts, Abid posted the motion to the public "Nevada Court Watchers" Facebook page with the caption "Should child abusers be able to hide behind a seal? Typical of a bully child abuser to desperately want to wash away the abuse … ." FER-094. The transcripts were posted separately a few minutes later with the caption "These are the transcripts Rude Lyud is seeking to seal..[.] #EmotionalChildAbuse." FER-096.

**c.** This ordinary understanding of "use"—to cover Abid's use of the transcripts on Facebook—aligns with the Wiretap Act's purposes. For starters, the per-day-of-violation damages provision anticipates that a single violation could span multiple days. *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1149

---

[2] www.facebook.com/help/286027304749263/?helpref=uf_share.

(9th Cir. 2020); *DirecTv, Inc. v. Webb*, 545 F.3d 837, 845 (9th Cir. 2008) (noting that the Wiretap Act's statutory damages provision "contemplat[es] a single violation that stretched over many days").

Moreover, "the protection of privacy was an overriding congressional concern." *Gelbard v. United States*, 408 U.S. 41, 48 (1972). By prohibiting the intentional disclosure and use of intercepted communications, "Congress has, in the clearest way, thus decided that the privacy interest of a victim of illegal electronic surveillance is too great to permit any disclosure at all." *Providence J. Co. v. FBI*, 602 F.2d 1010, 1013 (1st Cir. 1979). And "[e]ach time the illicitly obtained recording is replayed to a new and different listener, the scope of the invasion widens and the aggrieved party's injury is aggravated." *Fultz v. Gilliam*, 942 F.2d 396, 402 (6th Cir. 1991). In an era of widespread social-media use, then, Abid's postings on Facebook were the equivalent of replaying the recordings on loop for anyone in the world to hear given the transcripts' prolonged availability on the internet.

In sum, Abid's use of the transcripts, which are continuous invasions of Pyankovska's privacy, count as days "of violation" under the Act. This Court should reverse the district court's determination that $10,000 was the appropriate statutory damages award and remand with instructions to determine exactly how many days Abid disclosed and used the illegally obtained recordings. The district court should then calculate damages at "$100 a day for each day of violation." 18 U.S.C. § 2520(c)(2)(B).

### 2. Pyankovska is entitled to punitive damages under the Wiretap Act.

The district court erred by failing even to address Pyankovska's request for punitive damages, though the Wiretap Act separately authorizes them "in appropriate cases." 18 U.S.C. § 2520(b)(2). To receive punitive damages under the Act, a plaintiff "must show that [the] defendant[] acted wantonly, recklessly, or maliciously." *Jacobson v. Rose*, 592 F.2d 515, 520 (9th Cir. 1978). Appropriate considerations in a punitive-damages assessment include damage done, or sought to be done, by the perpetrator to the victim's reputation and whether the perpetrator continued to violate the statute, such as by distributing the contents of an illegal recording, after being put on notice that his conduct was unlawful. *Smoot*, 246 F.3d at 648.

Applying these factors here requires an award of punitive damages. In January 2016, the state trial court held that the recordings were unlawfully intercepted. Yet, more than a year later, Abid posted the transcripts online several times to different public Facebook groups. ER-068; FER-094-98. As detailed above (at 40-42), Abid adorned the posts with cruel and disparaging captions in a blatant (and successful) attempt to harm Pyankovska. In September 2018, Pyankovska asked Abid to take down the transcripts, but Abid refused because he wanted "[t]he world" to view his attacks on her. FER-113. As the district court noted in entering its default judgment, Abid publicly shared the documents despite his counsel's instructions to not "disclose any of this to anybody." FER-094; ER-058.

The purpose of punitive damages—to punish and deter harmful conduct—would be well served here. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008). As explained, Abid defiantly posted contents of the illegally intercepted recordings online many times. Abid asserts that he made the recordings to protect Sasha's well-being and to change custody. FER-102. Even indulging Abid's doubtful claim that his sole motivation in unlawfully making the recordings was to protect Sasha rather than to victimize his ex-wife, Abid continued his misconduct years after he was awarded primary physical custody, vitiating any argument that the purpose of maliciously publicizing the transcripts online was custody-related.

In short, Abid's conduct was wanton, reckless, and malicious, and this Court should remand to the district court to award punitive damages in an amount commensurate with that conduct.

### 3. Pyankovska is entitled to $1,413.25 in litigation costs under the Wiretap Act.

**a.** The district court also abused its discretion in failing, without explanation, to award Pyankovska her litigation costs. *Ass'n of Mex.-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (holding that a "district court must 'specify reasons' for its refusal to award costs") (citation omitted). The district court's error appears to have arisen from conflating statutory damages and litigation costs, *see* ER-011, even though the Wiretap Act designates them as separate remedies. 18 U.S.C. §

2520(b)(2)-(3); *see also* Fed. R. Civ. P. 54(d) (authorizing an award of costs to prevailing parties).

Pyankovska's recoverable litigation costs under the Act are not limited to only those traditionally awarded under 28 U.S.C. § 1920, such as filing fees. The Act's authorization of "other litigation costs" necessarily means that Congress intended to expand the scope of costs already recoverable under Section 1920 because, to hold otherwise, would, "in effect, excise the words 'other litigation costs' from the statute by rendering them meaningless." *Kuzma v. IRS*, 821 F.2d 930, 932 (2d Cir. 1987) (differentiating the Freedom of Information Act's "other litigation costs" provision, 5 U.S.C. § 552(a)(4)(E), from 28 U.S.C. § 1920); *Blazy v. Tenet*, 194 F.3d 90, 95 (D.C. Cir. 1999) (same as to the Privacy Act's "other litigation costs" provision, 5 U.S.C. § 552a(g)(2)(B)); *Miniex v. Houston Hous. Auth.*, 2019 WL 4920646, at *15-16 (S.D. Tex. Sept. 13, 2019) (awarding Westlaw charges as "litigation costs" under the False Claims Act, 31 U.S.C. § 3730(h)(2)); *compare La Quinta Franchising, LLP v. Cordelia Hotel Venture Inc.*, 2007 WL 9811148, at *8 (N.D. Cal. Nov. 16, 2007) (noting that some courts have held that the cost of computerized legal research is not recoverable under 28 U.S.C. § 1920 because it is not specifically listed there).

**b.** With these principles in mind, Pyankovska is entitled under 18 U.S.C. § 2520(b)(3) to recover as "other litigation costs" her filing and service fees, as well as transcript, printing, and PACER charges, each of which she substantiated in the district court.

In response to the district court's request, Pyankovska showed that she paid $400 for the district-court filing fee and $283 to serve the defendants. FER-042-46. Pyankovska also proved that she spent $70.85 for the transcript of the February 5, 2019, hearing, which resulted in a protective order against Abid's disclosure of Pyankovska's medical history, as well as her printing costs ($200) and PACER charges ($459.40). FER-023, 042-64; *see Gorelangton v. City of Reno*, 638 F. Supp. 1426, 1433-34 (D. Nev. 1986) (awarding filing fee, service costs, transcript costs, and copying costs under 28 U.S.C. § 1920); *Key Bank Nat. Ass'n v. Van Noy*, 598 F. Supp. 2d 1160, 1167-68 (D. Or. 2009) (awarding service fee under 28 U.S.C. § 1920 and separately awarding costs for computerized legal research); *In re Toys R Us-Del., Inc.*, 295 F.R.D. 438, 469-70 (C.D. Cal. 2014) (awarding PACER costs under Fed. R. Civ. P. 23(h)).

In sum, Pyankovska proved $1,413.25 in reasonable litigation costs, and this Court should remand to the district court with instructions to award them.

## B. Pyankovska is entitled to compensatory and punitive damages on her Nevada common-law claims.

As already explained, the district court granted a default judgment against Abid on all of Pyankovska's claims. ER-059. But despite Pyankovska's request for Nevada common-law compensatory and punitive damages on the default judgment, FER-084-91, the district court ignored that request, ER-004, even after Pyankovska pointed out the court's oversight in her motion to alter or amend. FER-004-13.

Pyankovska pleaded a range of state common-law claims. ER-070-74. Her claims for invasion of privacy and intentional and negligent infliction of emotional distress illustrate most pointedly the damages she suffered and the district court's failure to award them.

### 1. Damages available on Pyankovska's common-law claims

**a. Invasion of privacy.** Nevada follows the Restatement's approach to invasion-of-privacy torts, like those advanced by Pyankovska. *See People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 859 P.2d 1269, 1279 (Nev. 1995), *overruled in part on other grounds by City of Las Vegas v. Hecht*, 940 P. 2d 134 (Nev. 1997). An invasion of privacy entitles the plaintiff "to recover damages for (a) the harm to his interest in privacy resulting from the invasion; (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and (c) special damage of which the invasion is a legal cause." Restatement (Second) of Torts § 652H (Am. L. Inst. 1977). When "[p]rying and intruding into the private affairs and concerns of another" is involved, "disclosure of the information so obtained will certainly add to the amount of damages." *Id.* § 652D cmt. a (discussing Section 652B concerning liability for intrusion upon seclusion). This recovery includes damages for emotional distress and personal humiliation because those are the kinds of harms that normally result from secret recording and dissemination. *Id.* § 652H cmt. b.

Under Nevada law, the plaintiff may recover punitive damages if clear and convincing evidence shows that the defendant was guilty of oppression, fraud, or malice, whether express or implied. NRS 42.005(1).

**b. Infliction of emotional distress.** Nevada law entitles a plaintiff to compensatory damages for infliction of emotional distress when a defendant's extreme and outrageous conduct causing the plaintiff's distress is severe or extreme. *Olivero v. Lowe*, 995 P.2d 1023, 1025-26 (Nev. 2000); *Abrams v. Sanson*, 458 P.3d 1062, 1069-70 (Nev. 2020). And, again, punitive damages are authorized. NRS 42.005(1); *see, e.g.*, *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 884, 886-88 (Nev. 1999) (affirming award of $200,000 in compensatory damages on the intentional-infliction-of-emotional-distress claim and $1.8 million in punitive damages where the defendant's conduct led to the plaintiff's depressive disorder treated with medication and psychotherapy).

## 2. Pyankovska's proof of damages

Pyankovska submitted evidence below showing that she suffered severe emotional and physical damage as a result of Abid's invasions of her privacy and his inflictions on her of emotional distress.

**a. Severe emotional distress.** As explained in detail above (at 12-15), Pyankovska felt violated and developed anxiety and paranoia after being secretly recorded in her own home. She experienced further humiliation and acute anxiety and stress resulting from Abid's online harassment campaign. Pyankovska was prescribed medication to help manage her anxiety, panic

attacks, and insomnia. ER-018. Pyankovska began psychotherapy with Dr. Ponzo, who documented her severe "emotional distress and anguish" from depressive episodes, panic episodes, hypervigilance, negative flashback experiences, obsessional thought, and feelings of helplessness. ER-041-42 (¶¶ 9-10).

Pyankovska's suffering, described in detail by Pyankovska and Dr. Ponzo, was corroborated by the declarations of Pyankovska's husband, daughter, and close friend, all of whom witnessed her emotional and physical decline stemming from Abid's outrageous conduct. *See* ER-013-45. As shown earlier (at 14), her family watched her transform from a "very outgoing" and "confident" "happy person full of life" to someone sad and depressed, preoccupied and unfocused, suffering from insomnia and panic attacks, and experiencing chronic anxiety-induced stomach aches—a "shell of the person she once used to be." ER-026-27, 030-31.

Pyankovska's mental suffering also affected her personal and professional life, resulting in impaired job performance and social withdrawal. ER-040-42 (¶ 10). Her family, coworkers, and friends described her as uncharacteristically distracted, unmotivated, and disinterested in the things that used to bring her joy. *See* ER-013-45. She was a person "pushed all the way to the edge." ER-027.

**b. Physical symptoms.** Pyankovska's mental suffering from Abid's outrageous conduct also caused Pyankovska serious physical harm, including insomnia, chest and stomach pain, and appetite disturbances and

other disordered eating. ER-041-42 (¶ 10), 017. Pyankovska lay awake at night for months, struggling to "take control of [her] breathing" and fearing her heart would stop or she would have a stroke. ER-017.

**c. Punitive damages.** For the reasons already explained (at 43-44), Abid's conduct was oppressive and malicious, entitling Pyankovska to punitive damages on her state common-law claims.

\* \* \*

For these reasons, and given the district court's failure even to consider an award of damages on Pyankovska's Nevada common-law claims, this Court should reverse and remand with instructions to the district court to determine appropriate compensatory and punitive damages on those claims.

## Conclusion

This Court should reverse the district court's dismissal of Pyankovska's claims against Jones and remand for further proceedings.

This Court should also reverse and remand with instructions to the district court to award appropriate damages on Pyankovska's default judgment against Abid.

Respectfully submitted,

/s/ Brian Wolfman

Brian Wolfman

Madeline Meth

Hannah Mullen

GEORGETOWN LAW APPELLATE
   COURTS IMMERSION CLINIC

600 New Jersey Ave., NW,
Suite 312
Washington, D.C. 20001
(202) 661-6582

Radiance Campbell
Alessandra Lopez
Lois Zhang
   Student Counsel

Pro bono counsel for Appellant Lyudmyla Pyankovska

April 22, 2022

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 20-16294

I am the attorney or self-represented party.

**This brief contains** 11,729 **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

　　○ it is a joint brief submitted by separately represented parties;

　　○ a party or parties are filing a single brief in response to multiple briefs; or

　　○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Brian Wolfman　**Date** April 22, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**　　　　　　　　　　　　　　　　　　　　　　　　*Rev. 12/01/2018*

# Statutory Addendum

# Table of Contents

18 U.S.C. § 2510 ................................................................ 1a

18 U.S.C. § 2511 ................................................................ 2a

18 U.S.C. § 2515 ................................................................ 3a

18 U.S.C. § 2517 ................................................................ 4a

18 U.S.C. § 2520 ................................................................ 4a

28 U.S.C. § 1920 ................................................................ 5a

NRS 42.005 ....................................................................... 6a

NRS 125.110 ...................................................................... 7a

NRS 179.430 ...................................................................... 7a

NRS 179.500 ...................................................................... 7a

NRS 200.650 ...................................................................... 8a

NRS 200.690 ...................................................................... 8a

**FEDERAL LAW**

**Excerpts from the federal Wiretap Act**

**18 U.S.C. § 2510 – Definitions**

\* \* \*

(2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;

\* \* \*

(4) "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

(5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than—

   (a) any telephone or telegraph instrument, equipment or facility, or any component thereof,

      (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or

      (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

\* \* \*

(8) "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication.

## 18 U.S.C. § 2511 - Interception and disclosure of wire, oral, or electronic communications prohibited

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

\* \* \*

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

\* \* \*

(2) * * *

(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

(e) Notwithstanding any other provision of this title or section 705 or 706 of the Communications Act of 1934, it shall not be unlawful for an officer, employee, or agent of the United States in the normal course of his official duty to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, as authorized by that Act.

* * *

## 18 U.S.C. § 2515 - Prohibition of use as evidence of intercepted wire or oral communications

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

**18 U.S.C. § 2517 - Authorization for disclosure and use of intercepted wire, oral, or electronic communications**

* * *

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

* * *

**18 U.S.C. § 2520 – Recovery of civil damages authorized**

(a) In General.—

Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

(b) Relief.—In an action under this section, appropriate relief includes—

(1) such preliminary and other equitable or declaratory relief as may be appropriate;

(2) damages under subsection (c) and punitive damages in appropriate cases; and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred.

(c) Computation of Damages.—

* * *

 (2) In any other action under this section, the court may assess as damages whichever is the greater of—

(A)the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B)statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

(d) Defense.—A good faith reliance on—

(1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization;

(2) a request of an investigative or law enforcement officer under section 2518(7) of this title; or

(3) a good faith determination that section 2511(3), 2511(2)(i), or 2511(2)(j) of this title permitted the conduct complained of;

is a complete defense against any civil or criminal action brought under this chapter or any other law.

* * *

**The federal costs statute**

**28 U.S.C. § 1920 - Taxation of costs**

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

**NEVADA LAW**

**Nevada law on punitive damages**

**NRS 42.005 Exemplary and punitive damages: In general; limitations on amount of award; determination in subsequent proceeding.**

1. Except as otherwise provided in NRS 42.007, in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant. Except as otherwise provided in this section or by specific statute, an award of exemplary or punitive damages made pursuant to this section may not exceed:

(a) Three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more; or

(b) Three hundred thousand dollars if the amount of compensatory damages awarded to the plaintiff is less than $100,000.

* * *

**Provision regarding sealing of documents in Nevada family court**

**NRS 125.110**

* * *

2. All other papers, records, proceedings and evidence, including exhibits and transcript of the testimony, shall, upon the written request of either party to the action, filed with the clerk, be sealed and shall not be open to inspection except to the parties or their attorneys, or when required as evidence in another action or proceeding.

**Excerpts from the Nevada Wiretap Act**

**NRS 179.430 "Intercept" defined.**

"Intercept" means the aural acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device or of any sending or receiving equipment.

**NRS 179.500 Contents of intercepted communications inadmissible in evidence unless transcript provided to parties before trial.**

The contents of any intercepted wire, electronic or oral communication or evidence derived therefrom must not be received in evidence or otherwise disclosed in any trial, hearing or other proceeding in any court of this state unless each party, not less than 10 days before the trial, hearing or proceeding, has been furnished with a copy of the court order and accompanying application under which the interception was authorized and a transcript of any communications intercepted. Such 10-day period may be waived by the judge if the judge finds that it was not possible to furnish the party with such information 10 days before the trial, hearing or proceeding and that the party will not be prejudiced by the delay in receiving such information.

**NRS 200.650 Unauthorized, surreptitious intrusion of privacy by listening device prohibited.**

Except as otherwise provided in NRS 179.410 to 179.515, inclusive, and 704.195, a person shall not intrude upon the privacy of other persons by surreptitiously listening to, monitoring or recording, or attempting to listen to, monitor or record, by means of any mechanical, electronic or other listening device, any private conversation engaged in by the other persons, or disclose the existence, content, substance, purport, effect or meaning of any conversation so listened to, monitored or recorded, unless authorized to do so by one of the persons engaging in the conversation.

**NRS 200.690 Penalties.**

1. A person who willfully and knowingly violates NRS 200.620 to 200.650, inclusive:
   (a)  Shall be punished for a category D felony as provided in NRS 193.130.

   (b)  Is liable to a person whose wire or oral communication is intercepted without his or her consent for:

   (1)  Actual damages or liquidated damages of $100 per day of violation but not less than $1,000, whichever is greater;

   (2)  Punitive damages; and

   (3)  His or her costs reasonably incurred in the action, including a reasonable attorney's fee, all of which may be recovered by civil action.

2. A good faith reliance by a public utility on a written request for interception by one party to a conversation is a complete defense to any civil or criminal action brought against the public utility on account of the interception.