**No. 20-16294**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Lyudmyla Pyankovska,

Plaintiff-Appellant,

v.

Sean Abid, et al.,

Defendants-Appellees.

On Appeal from a Final Judgment of the
United States District Court for the District of Nevada
Case No. 2:16-cv-02942-JCM-PAL, Hon. James C. Mahan

### REPLACEMENT REPLY BRIEF FOR PLAINTIFF-APPELLANT
### LYUDMYLA PYANKOVSKA

Matthew Calabrese
Holly Petersen
Nathan Winshall
  Student Counsel

Brian Wolfman
Madeline Meth
GEORGETOWN LAW APPELLATE
  COURTS IMMERSION CLINIC
600 New Jersey Ave., NW,
Suite 312
Washington, D.C. 20001
(202) 661-6582

Pro bono counsel for Appellant Lyudmyla Pyankovska

October 6, 2022

# Table of Contents

Table of Authorities ..................................................................... ii

Introduction and Summary of Argument ...........................................1

Argument ......................................................................................3

   I.  Pyankovska's claims against Jones should be reinstated. ....................3

    A. Jones violated the federal and Nevada Wiretap Acts.........................3

    B. The First Amendment provides no shelter for Jones.........................5

     1.  *Bartnicki v. Vopper* does not shield Jones. ...........................5

     2. This case does not implicate *Noerr-Pennington*, and even if it did, that doctrine would not free Jones from liability...............................8

  II.  The district court erred in assessing default damages against Abid. .12

    A. Litigation costs and punitive damages under the Wiretap Act .......13

    B. Statutory damages under the Wiretap Act.........................13

    C. Compensatory and punitive damages on Pyankovska's Nevada common-law claims.............................................................16

Conclusion....................................................................................19

Certificate of Compliance .......................................................................

# Table of Authorities

**Cases**         **Page(s)**

*Abid v. Abid*,
  406 P.3d 476 (Nev. 2017) ...................................................................5

*Action S.A. v. Marc Rich & Co.*,
  951 F.2d 504 (2d Cir. 1991) .............................................................18

*Ass'n of Mex.-Am. Educators v. State of California*,
  231 F.3d 572 (9th Cir. 2000) ...........................................................13

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) .....................................................8, 9, 11

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) .............................................................2, 5, 6, 7

*BE & K Const. Co. v. N.L.R.B.*,
  536 U.S 516 (2002) .......................................................................9, 10

*Butler v. Bd. of Cnty. Comm'rs for San Miguel Cnty.*,
  920 F.3d 651 (10th Cir. 2019) ...........................................................8

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ........................................................................11

*Clark Cnty. Dist. Att'y, Juv. Div. v. Eighth Jud. Dist. Court*,
  167 P.3d 922 (Nev. 2007) ..................................................................8

*DirecTv, Inc. v. Webb*,
  545 F.3d 837 (9th Cir. 2008) ...........................................................15

*Dorris v. Absher*,
  179 F.3d 420 (6th Cir. 1999) ...........................................................14

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ...........................................................9

*Fultz v. Gilliam,*
   942 F.2d 396 (6th Cir. 1991)................................................................14

*Hardwick v. County of Orange,*
   844 F.3d 1112 (9th Cir. 2017).............................................................6

*Hunter v. Hughes,*
   794 Fed. Appx. 654 (9th Cir. 2020)....................................................7

*Jean v. Mass. State Police,*
   492 F.3d 24 (1st Cir. 2007) ................................................................6

*Koon v. United States,*
   518 U.S. 81 (1996)..............................................................................12

*Payton v. New York,*
   445 U.S. 573 (1980)............................................................................6

*Prince v. Massachusetts,*
   321 U.S. 158 (1944)............................................................................6

*Project Veritas Action Fund v. Rollins,*
   982 F.3d 813 (1st Cir. 2020) .............................................................5

*Smith v. Org. of Foster Families for Equality and Reform,*
   431 U.S. 816 (1977)............................................................................6

*Strauss v. Comm'r of Soc. Sec. Admin.,*
   635 F.3d 1135 (9th Cir. 2011)...........................................................12

*Theofel v. Farey-Jones,*
   359 F.3d 1066 (9th Cir. 2004).....................................................11, 12

*Troxel v. Granville,*
   530 U.S. 57 (2000)..............................................................................6

*United Nat'l Ins. Co. v. R & D Latex Corp.,*
   141 F.3d 916 (9th Cir. 1998)..............................................................16

*United States v. Crabtree,*
565 F.3d 887 (4th Cir. 2009)...........................................................................10

*United States v. DAS Corp.,*
18 F.4th 1032 (9th Cir. 2021).........................................................................16

*United States v. Estrada-Eliverio,*
583 F.3d 669 (9th Cir. 2009).........................................................................18

*White v. Lee,*
227 F.3d 1214 (9th Cir. 2000)......................................................................8, 9

**Statutes and Rule**

18 U.S.C. § 2511(1)(d)...................................................................................15

18 U.S.C. § 2511...........................................................................................10

18 U.S.C. § 2511(1)(c).....................................................................................3

18 U.S.C. § 2515.............................................................................................3

18 U.S.C. § 2520(b)(2)...................................................................................13

18 U.S.C. § 2520(c)(2)....................................................................................14

18 U.S.C. § 2520(c)(2)(A)..............................................................................13

18 U.S.C. § 2520(c)(2)(B)..............................................................................14

42 U.S.C. § 1983.............................................................................................9

42 U.S.C. § 1997e..........................................................................................11

NRS 125.110..................................................................................................12

NRS 125.110(2)...............................................................................................7

NRS 179.500.............................................................................................3, 10

NRS 200.650.............................................................................................3, 10

iv

NRS 200.690...................................................................................................3

Fed. R. Evid. 802 ........................................................................................11

## Other Authorities

Adams, Allison B., *Hidden Landmines for the Family Law
    Practitioner: Attorney Liability under State and Federal Wiretap
    Statutes*, 27 J. Am. Acad. Matrim. Law. 263 (2015).......................................4

S. Rep. No. 90-1097 (1968) ......................................................................10

## Introduction and Summary of Argument

This case is not, as John Jones would prefer, about parenting, custody proceedings in the Nevada courts, or Jones's purported zealous advocacy. Rather, it is about Lyudmyla Pyankovska's efforts to vindicate her privacy rights under the federal and Nevada Wiretap Acts and Nevada common law for the grave harm that Jones and Sean Abid caused her.

Abid secretly recorded private conservations between his ex-wife, Pyankovska, and their son, Sasha, without Pyankovska's or Sasha's consent. He then selectively edited the intercepted conversations, destroyed all evidence of what he had removed, transcribed the small part that remained, and gave the transcript to Jones, his family-law attorney. Jones then placed the transcript on a public court docket even though he knew that the communications had been unlawfully intercepted by Abid and would then be available for all the world to see. For about two years, Abid posted the transcript online, directed friends and strangers to read it, and used it to incite constant harassment of Pyankovska and to publicly disparage her.

The district court improperly relieved Jones of liability under the federal and Nevada Wiretap Acts and miscalculated the default-judgment damages Abid owes to Pyankovska under the federal Act and Nevada common law. On appeal, Jones seeks refuge behind misguided understandings of the First Amendment. Abid, for his part, tacitly concedes much of his additional damages liability and misconstrues the Wiretap Act's damages provision on the one category of damages he meaningfully contests.

1

*First*, Jones's conduct violated the federal and Nevada Wiretap Acts. His equivocal references to the vicarious-consent doctrine do not withstand scrutiny because no state has ever adopted the doctrine when the parent with physical custody over the child does not consent to the recording and, separately, because Abid lacked good faith. *See infra* at 3-5.

The First Amendment does not shield Jones. He maintains that *Bartnicki v. Vopper*, 532 U.S. 514 (2001), immunizes his violations of the Wiretap Acts, but the private conversations between Pyankovska and Sasha could not be further from the matters of significant public concern at issue there. *Id.* at 525; *see infra* at 5-8. The *Noerr-Pennington* doctrine, on which Jones also relies, is even further afield. That doctrine advises courts to construe ambiguous statutory language to avoid burdening petitioning activity. But the Wiretap Acts contain no ambiguity. They expressly—and constitutionally—prohibit certain petitioning conduct. Jones is therefore liable under the Wiretap Acts. *See infra* at 8-12.

*Second*, Abid offers little in response to the district court's errors in assessing Pyankovska's damages. He fails to address Pyankovska's claim to litigation costs and punitive damages under the federal Wiretap Act, and he misunderstands the district court's legal error as to her common-law claims. *See infra* at 13, 16-19.

On the only point Abid squarely addresses—the district court's failure to award Pyankovska statutory Wiretap Act damages of $100 for each day of violation—he argues that the district court had complete discretion to

determine not only whether Pyankovska was entitled to statutory damages, but also as to the amount. That is an incorrect reading of the Act's text, which requires that entitlement to statutory damages be assessed based on the number of days the Act was violated. *See infra* at 13-16.

## Argument

### I.    Pyankovska's claims against Jones should be reinstated.

### A. Jones violated the federal and Nevada Wiretap Acts.

Jones placed a transcript of illegally intercepted communications on a public court docket. FER-102-03. Because Jones had "reason to know" that the communications were illegally obtained, he violated the Wiretap Acts' prohibitions on intentional disclosures of unlawfully intercepted communications, 18 U.S.C. § 2511(1)(c); NRS 200.650, .690, and their express prohibition on the use in court of illegally obtained communications, *see* 18 U.S.C. § 2515; NRS 179.500.

Jones does not directly contest that he violated the Wiretap Acts, and his point headings indicate that he relies solely on First Amendment defenses to escape liability. *See* Jones Resp. Br. 17, 19, 34. Jones obliquely suggests, however, that his purported belief that the communications were "arguably lawful[]" under the vicarious-consent doctrine excuses him from liability under the Acts. Jones Resp. Br. 25.

But "arguably lawful" is not an escape hatch from liability. As long as Jones had "reason to know" that the transcript was illegally obtained, he violated the Acts. 18 U.S.C. § 2511(1)(c); *see* NRS 200.650, .690. Thus, as our

opening brief explained (at 23-26), Jones had no reason to assume—and certainly no "reason to know"—that the vicarious-consent doctrine would apply for two independently sufficient reasons.

First, we are unaware of any decision, and Jones has not identified one, that applies the vicarious-consent doctrine to a situation in which the purportedly consenting parent (here, Abid) lacked physical custody over the child at the time of the recording. *See* Opening Br. 24-26. And for good reason. If vicarious consent were to apply to Pyankovska's conversations with Sasha, either Pyankovska or Abid would have had to consent on Sasha's behalf. Pyankovska did not consent on Sasha's behalf; Abid now claims he did. In that situation, the tiebreaker must go to the parent immediately responsible for the child—the parent with physical custody. No trained lawyer, let alone a seasoned family-law attorney like Jones, would expect the court to apply an interpretation of a family-law doctrine that has never been adopted. Indeed, family lawyers should be especially conscious of potential Wiretap Act liability in this type of situation, considering that 79% of unlawful wiretaps occur in the family context. Allison B. Adams, *Hidden Landmines for the Family Law Practitioner: Attorney Liability under State and Federal Wiretap Statutes*, 27 J. Am. Acad. Matrim. Law. 263, 263-64 (2015).

Second, and separately, Jones had no reason to believe that Abid had acted in good faith—and every reason to believe otherwise. *See* Opening Br. 26. Recall that Abid "edited" the recording by discarding the great majority of three days of audio to produce text that, presumably, he thought would

4

be most damaging to Pyankovska in the custody dispute. *See id.* at 5. He then destroyed the recording equipment and the computer on which he had stored the full audio recording, *id.*—hardly a sign that Abid had nothing to hide*.

Despite these facts, Jones argues that the Nevada courts absolved Abid of bad faith. Jones Resp. Br. 26-28. Not true—and quite the contrary. The Nevada Supreme Court "by no means condone[d] Sean [Abid]'s actions" and noted that Abid could be prosecuted and subjected to civil liability. *Abid v. Abid*, 406 P.3d 476, 479-80 (Nev. 2017). That court observed that the Nevada Wiretap Act "creates a private right of action for Sean's ex-wife and child to sue for Sean's intrusion into their privacy." *Id.* at 480. Jones thus had "reason to know" that Abid violated the Acts, and his 13th-hour reliance on the vicarious-consent doctrine was (and remains) unreasonable.

**B. The First Amendment provides no shelter for Jones.**

### 1. *Bartnicki v. Vopper* does not shield Jones.

Jones's argument that his otherwise unlawful conduct is immunized under *Bartnicki v. Vopper*, 532 U.S. 514 (2001), misses the mark. *See* Jones Resp. Br. 23-25. Generally, "the Federal Constitution must tolerate" the Wiretap Acts, *Bartnicki*, 532 U.S. at 537 (Breyer, J., concurring), and it easily does here—as applied to the wiretapping of an ex-spouse in her "private home," *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 817 (1st Cir. 2020).

In *Bartnicki*, the Court carved out a "narrow" First Amendment exception to the federal Wiretap Act. 532 U.S. at 517. There, two high-ranking union

officials were surreptitiously recorded discussing an ongoing and already-controversial union dispute, and one of them made a violent threat against the public. *Id.* at 518-20. The Court extended First Amendment protection to the people who disclosed the illicit recording because the communications were between individuals with low expectations of privacy who were discussing matters of great public concern. *Id.* at 534.

Jones's attempt to jam his conduct through *Bartnicki*'s pinhole exception fails. Courts considering *Bartnicki* have "balance[d]" the privacy interests protected by the Wiretap Act "against the public interest in the disclosure of information." *Jean v. Mass. State Police*, 492 F.3d 24, 28 (1st Cir. 2007).

Pyankovska's privacy interests are weighty. For starters, her conversations with Sasha fall squarely within "the private realm of family life." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *see Troxel v. Granville*, 530 U.S. 57, 66 (2000); *Hardwick v. County of Orange*, 844 F.3d 1112, 1121 (9th Cir. 2017) ("[T]he fundamental liberty interests of parents and their children in their familial relationship has long been clearly established."). And the conversations occurred largely in Pyankovska's home, ER-015, ER-063, where she has a particularly strong and deeply-rooted expectation of privacy. *See Payton v. New York*, 445 U.S. 573, 596-97 (1980). The "family privacy," *Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816, 840 (1977), that Pyankovska and Sasha should have enjoyed—but which Abid and Jones violated—stands in stark contrast to the "unusually low" privacy interests possessed by two well-known and high-ranking union

6

officials, *Bartnicki*, 532 U.S. at 540 (Breyer, J., concurring); *see id*. at 518 (majority opinion).

On the other side of the balance, Pyankovska's conversations with Sasha are not matters of public concern. Even assuming that Pyankovska may have alienated Abid from Sasha, the transcript implicates only the relationships among the three of them. It does not touch the lives of anyone else in the broader community and is not a legitimate "subject[] of general interest and value to the public." *Hunter v. Hughes*, 794 Fed. App'x. 654, 654 (9th Cir. 2020). That the transcript became fodder for Facebook gossip and harassment does not make it a matter of public concern either. If a leaked sex tape involving two celebrities is not a matter of public concern, *see Bartnicki*, 532 U.S. at 540 (Breyer, J., concurring), then neither is a private conversation between a mother and her child about the child's father. As our opening brief observed (at 34), the Nevada Legislature views family and divorce matters as quintessentially private. On written request, either party to a Nevada divorce proceeding has the right to maintain any "evidence, including exhibits and transcript of the testimony" under seal. NRS 125.110(2).

Jones's view that any issue "concerning children" and "potential emotional abuse" are matters of public concern is wrong. Jones Resp. Br. 32. Jones zooms out from Pyankovska and Sasha's particular conversations to rely on the public's interest in "potential emotional abuse" as a general matter. But for a conversation to be one of public concern, "it is not sufficient that the topic of the speech be of general interest to the public; in addition,

7

what is *actually said* must meet the public concern threshold." *Butler v. Bd. of Cnty. Comm'rs for San Miguel Cnty.*, 920 F.3d 651, 664 (10th Cir. 2019) (citation and brackets omitted). The cases Jones cites (at 32) all highlight the importance of child welfare in the family-court context, where private, individualized adjudications occur. *See, e.g.*, *Clark Cnty. Dist. Att'y, Juv. Div. v. Eighth Jud. Dist. Court*, 167 P.3d 922 (Nev. 2007). Those cases do not remotely suggest that particular family-law disputes are topics for public discourse, much less that they are viewed as matters of public concern under the First Amendment such that they could override the Wiretap Acts' anti-disclosure provisions.

> **2.** **This case does not implicate *Noerr-Pennington*, and even if it did, that doctrine would not free Jones from liability.**

**a.** Jones's reliance on the *Noerr-Pennington* doctrine is wrong because that doctrine does not apply here. *Noerr-Pennington* functions as "a generic rule of statutory construction" that counsels courts "to avoid burdening conduct that implicates the protections afforded by the Petition Clause *unless the statute clearly provides otherwise*." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 539-40 (9th Cir. 2022) (citation omitted) (emphasis added). The doctrine thus applies only when a court interprets a broadly-worded, ambiguous statute that could (but need not) be construed to prohibit petitioning conduct.

The case Jones principally relies on, *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000), makes our point. It demonstrates that *Noerr-Pennington* applies only

when a wide-ranging statute creates ambiguity over whether it reaches petitioning conduct. *White* involved a government investigation into a group of residents for allegedly violating the Fair Housing Act's broad prohibition on "discriminatory housing practices" by filing suit to prevent the construction of a homeless shelter. *Id.* at 1222-23. The court explained that although the Act's ban on "discriminatory housing practices" *could* be read to prohibit the lawsuit, reading that ambiguous language to do so would dredge up avoidable First Amendment problems. *Id.* The court therefore construed the Fair Housing Act to exclude a prohibition on lawsuits. *Id.* at 1229-30, 1232-34. Other decisions applying *Noerr-Pennington* similarly involved broad, ambiguous statutory prohibitions that might or might not proscribe petitioning activity.[1]

**b.** This case is nothing like *White*—and has nothing to do with *Noerr-Pennington*—because the only fair way to read the federal and Nevada Wiretap Acts is to cover conduct like Jones's disclosure and use of Abid's unlawful recording. The Acts specifically prohibit disclosures and uses of

---

[1] *See, e.g., B&G Foods*, 29 F.4th at 533-34, 539-40 (interpreting 42 U.S.C. § 1983 so that a lawsuit demanding that a company label its products with cancer warnings even when the suit would compel false speech is not a "deprivation of any rights, privileges, or immunities"); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (interpreting the Sherman Act so that an association of executives working together in a litigation discovery process is not a "restraint of trade"); *BE & K Const. Co. v. N.L.R.B.*, 536 U.S 516, 533, 535-36 (2002) (interpreting the NLRA so that a lawsuit against unions trying to delay the work of a nonunionized general contractor does not violate the Act's broad prohibition on retaliatory conduct).

illegally intercepted communications. 18 U.S.C. § 2511; NRS 200.650. And the statutes "clearly and unambiguously prohibit the use in court of improperly intercepted communications." *United States v. Crabtree*, 565 F.3d 887, 889 (4th Cir. 2009). In fact, Congress knew that it was targeting the use of recordings in *family-law proceedings*. S. Rep. No. 90-1097, at 225 (1968) (views of Sens. Dirksen, Hruska, Scott, and Thurmond); *see* Opening Br. 31. There is simply no ambiguity here, much less the substantial ambiguity necessary to make *Noerr-Pennington* relevant. *See BE & K Const. Co.*, 536 U.S at 535. Thus, applying the *Noerr-Pennington* doctrine to the Wiretap Acts here would not, as Jones suggests, protect "a certain group of limited actors from liability." Jones Resp. Br. 41; rather, it would nullify the Acts' application to large swaths of conduct that Congress and the Nevada Legislature expressly sought to prohibit. Nowhere is this clearer than in the Nevada Act, which prohibits illegally obtained interceptions from being "disclosed in any trial, hearing or other proceeding" conducted by a Nevada court. NRS 179.500.[2]

Jones argues that petitioning conduct may be "abridged by *no law*." Jones Resp. Br. 38 (emphasis in original). That is wrong. As our opening brief explains (at 32), all sorts of limits on petitioning activity—such as the Federal Rules of Evidence, word limits for briefs, and discovery restrictions—are

---

[2] For much the same reasons, Jones's argument that a "litigation privilege" should shield him from Nevada-law liability proves too much. The Nevada Legislature's express prohibition on the use of unlawfully intercepted communications in court, *see* NRS 179.500, cannot be overcome by a general common-law privilege. *See* Opening Br. 34-36 (explaining why Jones's reliance on purported common-law defenses should be rejected).

plainly consistent with the First Amendment. Jones downplays these impairments on petitioning activity, calling them "minor time, place and manner regulations," and asserts that a refusal to apply the *Noerr-Pennington* doctrine would "shut the courthouse door to information." Jones Resp. Br. 46 n.50. But that is exactly what, for example, the rule against hearsay does. *See* Fed. R. Evid. 802. And the whole point of the Prison Litigation Reform Act is to restrict the petitioning activity of a certain class of litigants. *See, e.g.,* 42 U.S.C. § 1997e. Jones has no answer to this.

**c.** Even if we assume (counterfactually) that the *Noerr-Pennington* doctrine did apply generally to disclosures and uses of unlawful intercepts under the Wiretap Acts, the doctrine would not cover Jones's particular submission to the court here. The *Noerr-Pennington* doctrine does not protect those who engage in sham litigation, including suits in which a party abuses the litigation process to cause harm to an opponent. *See B&G Foods*, 29 F.4th at 536. That is exactly what Abid and Jones have done. Acting unilaterally, they placed an illegally obtained private communication on a publicly available court docket, enabling Abid and his friends to bully and humiliate Pyankovska online for almost two years. ER-058; FER-094.

Any merit to Abid's underlying custody claim is irrelevant. Legitimate litigation cannot transform *particular* litigation abuse into constitutionally protected activity. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1079 (9th Cir. 2004); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972). In *Theofel*, this Court held the plaintiffs' "bad faith" and "'egregiously' overbroad"

11

subpoena to be "tantamount to a finding that the subpoena was objectively baseless" and therefore sham litigation, even though the underlying lawsuit was meritorious. 359 F.3d at 1079. *Theofel*'s lesson is that *Noerr-Pennington* protects those who play by the rules in pursuing good-faith litigation. It does not shield those who break the law to humiliate others.

And Jones easily could have played by the rules. He could have asked the court for a ruling on the legality of submitting the transcript or, at the very least, submitted it to the court under seal to protect Pyankovska's privacy, *see* Opening Br. 27, as family-law attorneys are expressly authorized to do, *see* NRS 125.110 (allowing either party to a divorce proceeding to seal any document other than the pleadings and orders). Instead, he disclosed the illegally intercepted communications to the public in brazen violation of the federal and Nevada Wiretap Acts. The harms Jones caused may be remedied.

## II. The district court erred in assessing default damages against Abid.

Our opening brief showed that the district court committed four distinct legal errors in calculating Pyankovska's damages, each of which was, by definition, an abuse of discretion. *See Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1137 (9th Cir. 2011) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)). As we now explain, Abid's answering brief ignores two of these errors, defends the third based on a misinterpretation of the federal Wiretap Act's damages provision, and fails to respond in substance to the fourth.

### A. Litigation costs and punitive damages under the Wiretap Act

The district court erred by neglecting to address Pyankovska's request for litigation costs under the federal Wiretap Act, thereby failing to "specify reasons" for their denial. *Ass'n of Mex.-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000) (citation omitted). The court similarly failed to consider punitive damages, even though the Act separately authorizes punitive damages "in appropriate cases." 18 U.S.C. § 2520(b)(2).

Our opening brief showed (at 43-44) that Abid's egregious misconduct met the standard for punitive damages and (at 44-46) that Pyankovska provided a detailed accounting of her litigation costs, which the district court was required to award. Abid's brief offers no response on either score. This Court should reverse and remand for the district court to consider punitive damages and to award litigation costs under the Wiretap Act.

### B. Statutory damages under the Wiretap Act

Once the district court determined that Pyankovska was entitled to statutory damages under the Wiretap Act, *see* ER-011, it failed to follow the statute's instructions for assessing them. Abid's brief to this Court is based on a misunderstanding of the Act's text.

**1.** Our opening brief (at 39-40) explains why the district court's award of only $10,000 in statutory damages was insufficient.

Abid argues that the award was proper because 18 U.S.C. § 2520(c)(2) says the court "may" award statutory damages and therefore gives courts discretion not to award statutory damages at all even when the Act has been

violated. Abid Resp. Br. 7-8. That is true, but irrelevant here. Once the district court decided that statutory damages *should* be awarded, it was bound by the statutory text, which permits the court to award the statutory minimum of $10,000 only when that award would be greater than both "the sum of the actual damages suffered by the plaintiff and any profits made by the violator" and "$100 a day for each day of violation." 18 U.S.C. § 2520(c)(2)(A)-(B); *see Dorris v. Absher,* 179 F.3d 420, 430 (6th Cir. 1999).

**2.** Our opening brief explains (at 39-42) that Abid violated the Wiretap Act on more than 100 days, entitling Pyankovska to greater than $10,000 in statutory damages. He violated the Act on the three days he intercepted Pyankovska's conversations with Sasha and on the day he disclosed the contents of the recordings to the state court. Then, he continuously violated the Act over the 703-day span in which he disclosed and intentionally used the transcript by posting it and leaving it available in public Facebook groups.

Each day that Abid leveraged the illegally obtained transcript to embarrass and harass Pyankovska online, a new and discrete "day of violation" occurred. 18 U.S.C. § 2520(c)(2)(B). Abid's public, online posts were equivalent to replaying the recordings on loop for anyone to hear, *see* Opening Br. 42, and each time the illicitly obtained communication reached a different audience, "the scope of the invasion widen[ed] and the aggrieved party's injury [was] aggravated." *Fultz v. Gilliam*, 942 F.2d 396, 402 (6th Cir. 1991). The Wiretap Act's damages provision requires counting days *of*

14

violation—not simply the number of violative acts—and therefore "contemplat[es]" that a "single violation" may "stretch[] over many days." *See DirecTv, Inc. v. Webb*, 545 F.3d 837, 845 (9th Cir. 2008). Thus, Abid violated the Act not just on the days he actively posted, but also on the days his previous posts remained available in public Facebook groups so that different audiences could engage with them.

Abid counters that Pyankovska cannot show that the posts were online for more than 100 days, asserting that the "posts that are presented as evidence are not dated and no date range is provided." Abid Resp. Br. 9. Not so. Pyankovska's evidence shows that Abid disclosed and used the transcript on Facebook at least as early as June 10, 2017, and that these posts continued until at least May 13, 2019. ER-068; FER-094-098.

Even more damning, Pyankovska emailed Abid in September 2018, more than a year after the first known Facebook disclosure, and asked him to remove the posts and to stop posting. FER-113. In response, Abid not only refused to take down the posts, but asserted that he wanted them to remain online so that "[t]he world" could see the "vile and disgusting" transcript. *Id*. This exchange illustrates that Abid himself understood that he was "using" the transcript, *see* 18 U.S.C. § 2511(1)(d), and its continued availability online to further injure Pyankovska.

Though the district court emphasized the importance of deterrence in its damages assessment, it awarded Pyankovska only the statutory minimum without counting days of violation. ER-011. The only logical and consistent

15

way to give the Act the deterrent value Congress intended is to follow the statute's mandatory method for awarding damages for continuing violators.

Though it may be difficult to show precisely how many days Abid violated the Act, the district court nevertheless erred by not asking the appropriate question or attempting to count the days. It should do so on remand.

### C. Compensatory and punitive damages on Pyankovska's Nevada common-law claims

The district court further erred by ignoring Pyankovska's damages request on her Nevada invasion-of-privacy and infliction-of-emotional-distress claims, though these claims were part of the default judgment entered against Abid. *See United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 918-19 (9th Cir. 1998) (finding that the district court abused its discretion in failing to make any findings and to state its reasoning). Given the district court's failure to consider damages on Pyankovska's common-law claims, our opening brief argued (at 46-50) that this Court should reverse and remand with instructions to determine appropriate compensatory and punitive damages.

Instead of defending the district court on this point, Abid responds as if we had said that the district court erred merely by failing to afford Pyankovska's evidence enough weight. Abid Resp. Br. 9-12. This mischaracterizes our argument. The actual legal error—which is entitled to de novo review, *see United States v. DAS Corp.*, 18 F.4th 1032, 1040 (9th Cir.

2021)—is that, after awarding a default judgment on Pyankovska's common-law claims, the district court did not even mention those claims or their relationship to the evidence Pyankovska submitted in assessing default damages. *See* Opening Br. 46-47.

In an attempt to show that the district court *did* consider Pyankovska's request for damages on these claims, Abid quotes an excerpt from the district court order, which states that while "it has jurisdiction to award damages incurred as a result of the underlying state court action … it does not necessarily follow that it ought to." *See* Abid Resp. Br. 9-10 (quoting ER-009).

But that portion of the district court's opinion considered whether Pyankovska could recover damages for injuries suffered because she lost custody of Sasha to her ex-husband (such as Pyankovska's obligation to pay child support)—damages that were "incurred as a result of the underlying state court action," *see* ER-009, and for which Pyankovska seeks no relief in this appeal. Again, Pyankovska is pursuing damages on her invasion-of-privacy and infliction-of-emotional-distress claims for the injuries she suffered as a result of the unlawful interception, disclosure, and use of the illegally obtained recordings.

As our opening brief explains (at 48-50), on that question, Pyankovska submitted considerable evidence—including her own declaration, declarations from family members and a friend, expert evidence from her doctor, medical records, and performance evaluations from her employer—showing her severe emotional and physical injuries. Abid provided no

evidence of his own. In this Court, Abid has not defended the district court's complete failure to consider damages on Pyankovska's common-law claims.

Abid suggests that the evidence Pyankovska submitted to the district court was inadequate to support her damages claim. Abid Resp. Br. 10-12. This argument also fails. For one, Abid does not contest the evidentiary sufficiency of Pyankovska's principal evidence—the multiple declarations she submitted detailing her emotional and physical suffering. And, as our opening brief pointed out (at 37), in assessing default-judgment damages, the court may rely solely on declarations submitted by the parties when the amount claimed is difficult to discern. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508-09 (2d Cir. 1991) (considering declarations and awarding compensatory and punitive damages without an evidentiary hearing).

Second, this appeal is not the time or place to consider the authenticity of Pyankovska's documentary evidence. Following entry of the default judgment against Abid, the district court instructed Pyankovska, a pro se plaintiff, to file an accounting of her damages. *See* ER-059. She did just that— and in abundance. *See* Opening Br. 48-50. If there was any doubt as to the validity of Pyankovska's evidence, the district court could have required Pyankovska to authenticate it by any "method authorized by law." *United States v. Estrada-Eliverio*, 583 F.3d 669, 672 (9th Cir. 2009) (citation omitted). But the salient point, which Abid seems to miss, is that the district court did not consider the authenticity of Pyankovska's evidence because it failed to consider her evidence at all.

This Court should reverse and remand with instructions for the district court to determine appropriate compensatory and punitive damages on Pyankovska's Nevada common-law claims.

### Conclusion

This Court should reverse the district court's dismissal of Pyankovska's claims against Jones and remand for further proceedings. This Court should also reverse and remand for a lawful and accurate damages accounting on Pyankovska's default judgment against Abid.

Respectfully submitted,

/s/ Brian Wolfman

|  |  |
|---|---|
| Matthew Calabrese | Brian Wolfman |
| Holly Petersen | Madeline Meth |
| Nathan Winshall | GEORGETOWN LAW APPELLATE |
|   Student Counsel |   COURTS IMMERSION CLINIC |
|  | 600 New Jersey Ave., NW, Suite 312 |
|  | Washington, D.C. 20001 |
|  | (202) 661-6582 |

Pro bono counsel for Appellant Lyudmyla Pyankovska

October 6, 2022

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 20-16294

I am the attorney or self-represented party.

**This brief contains** 4,681 **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Brian Wolfman **Date** October 6, 2022

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/2018*